# THE MAY PARTNERSHIP

## v.

## KEITH W. BARKER, CCIM, P.A.

Record No. 921633

June 11, 1993

Present: All the Justices

*William B. O'Connell (Cranwell & O'Connell,* on brief), for appellant.
*Julian Karpoff (Karpoff, Title & Mitnick,* on brief), for appellee.

JUSTICE STEPHENSON delivered the opinion of the Court.

This appeal involves a dispute between a seller and a real estate broker over commissions claimed by the broker in a real estate transaction that failed to go to settlement.

Keith W. Barker, CCIM, P.A. (Barker), a Maryland corporation, sued The May Partnership (May), a Virginia partnership, to recover $150,000, plus attorney's fees and interest. Barker alleged that May breached a real estate brokerage contract. May counterclaimed for $100,000, alleging that Barker breached the same contract. Following a bench trial, the trial court granted Barker a judgment for $150,000, plus interest and $7,500 in attorney's fees. May appeals.

In February 1989, May and Barker entered into a written contract whereby May granted Barker the exclusive authorization to sell certain real property owned by May in Prince Georges County, Maryland. May agreed to pay Barker a brokerage fee of 10% of the sales price, provided Barker produced a buyer willing and able to pay $6.00 a square foot for the property.

On July 21, 1989, Barker procured a sales contract signed by the potential buyer, Elmco Properties, Inc. (the Buyer), which May also signed. The sales contract provided for a sales price of $2,500,000, based upon $6.00 per square foot, with a down payment of $100,000, to be held in escrow. Paragraph 7 of the sales contract, entitled "SETTLEMENT," provided, *inter alia*, as follows:

> If the Buyer shall fail to make full settlement as required herein, the portion of the deposit herein provided for that is at risk may be forfeited as agreed liquidated damages in which event the Buyer shall be relieved from further liability hereunder. In the event of forfieture [sic], the Agent shall be allowed one half thereof as full compensation for its services hereunder.

Paragraph 16 of the sales contract, entitled "AGENCY," stated, *inter alia*, the following:

> Buyer and Seller acknowledge Keith W. Barker, CCIM, P.A. (herein Agent) to be the sole procuring cause of this sale. . . . The party conducting settlement hereunder is hereby authorized by the Seller to deduct the amount of the Brokerage fee from the Seller's proceeds of sale and to pay the same directly to Agent.

On December 13, 1989, after it became apparent that the Buyer would be unable to close on the sale at the time agreed upon in the sales contract, May and the Buyer executed an "addendum" that "modified" the contract in a number of particulars. The addendum provided that the Buyer could delay settlement until April 13, 1990. May and the Buyer also agreed that the $100,000 deposit held in escrow "shall be released and disbursed to [May] . . . , and Buyer shall make an additional payment of $250,000.00" to May, all of which "shall be credited against the purchase price at settlement." The Buyer further agreed that May could require an additional payment of $300,000 to be credited against the purchase price and agreed to pay interest on the unpaid balance of the purchase price at the rate of 1% per month. The additional $300,000 was paid to May by the Buyer, bringing the total deposit to $650,000.

Paragraph 5 of the addendum provided, *inter alia*, as follows:

All monies paid over to Seller as set forth in this Addendum shall be considered as a deposit. Should Buyer default and not settle on the property, the monies on deposit shall be used to compensate Seller for actual reasonable damages sustained as the result of Buyer's default. Seller shall exercise its best efforts in good faith to mitigate its damages. In no event shall Seller's damages exceed the monies on deposit.

The final clause of the addendum read as follows:

All other terms and conditions of the referenced sales contract remain in full force and effect, unchanged by this addendum. In the event of any inconsistency between this addendum and the sales contract . . ., the terms of this addendum shall prevail.

Barker was not a signatory to either the sales contract or the addendum. The record shows, however, that Barker knew and approved of the provisions in the sales contract and participated in negotiating the terms of the addendum.

On the day following execution of the addendum, May paid Barker $100,000 by a check dated December 14, 1989, bearing the notation, "Commission-Beltway Center." Thereafter, the Buyer abandoned the contract and refused to close on the purchase.

Barker claims that May is obligated to pay it a brokerage commission of $250,000, *i.e.*, 10% of the agreed sales price of $2,500,000. The balance owing, according to Barker, is $150,000. The agreed-upon commission was earned, Barker contends, because Barker procured a buyer acceptable to May and because May and the Buyer executed a valid, binding contract. May contends, on the other hand, that, under the terms of the sales contract, it owes Barker no commission because the transaction never went to settlement.

The contracts in question were made and to be performed in the State of Maryland, and the contracts did not specify the governing law. Therefore, Maryland law governs. *Woodson* v. *Celina Mutual*, 211 Va. 423, 426, 177 S.E.2d 610, 613 (1970).

■ Maryland Code Ann., Real Property § 14-105 (1974) (the Maryland statute) states, in pertinent part, as follows:

*In the absence of special agreement to the contrary*, if a real estate broker employed to sell . . . procures in good faith a purchaser . . . and the person procured is accepted by the employer

and enters into a valid, binding, and enforceable written contract, in terms acceptable to the employer, of a sale . . . or other contract, as the case may be, and the contract is accepted by the employer and signed by him, the broker is deemed to have earned the customary or agreed commission. He has earned the commission regardless of whether or not the contract entered into is performed, unless the performance of the contract is prevented, hindered, or delayed by any act of the broker.

(Emphasis added.) Thus, the critical question is whether May and Barker had a ''special agreement'' contrary to the provisions of the Maryland statute. *See, e.g., Berman* v. *Hall*, 340 A.2d 251, 253 (Md. 1975); *Snider Bros.* v. *Heft*, 317 A.2d 848, 852 (Md. 1974). In order to answer this question, we must consider not only the written instruments but also the testimonial evidence adduced at trial. Although Barker was not a party to the sales contract or the addendum, he accepted them and, therefore, is bound by them. *Porter* v. *General Boiler Casing Co.*, 396 A.2d 1090, 1094 (Md. 1979).

The parties have not pointed to any language in the listing agreement that would constitute a ''special agreement to the contrary,'' and we do not find such language therein. May and Barker agree, however, that paragraphs 7 and 16 of the sales contract constituted a ''special agreement'' within the intendment of the Maryland statute. Paragraph 7 provided that, if the Buyer ''fail[ed] to make full settlement,'' the deposit of $100,000 would be ''forfeited as agreed liquidated damages,'' the Buyer would be ''relieved from further liability,'' and Barker would receive ''one half'' of the deposit, *i.e.*, $50,000, ''as full compensation for its services.'' Paragraph 16 provided that Barker's commission would be deducted from the sale proceeds at settlement.

May and Barker do not agree about the effect of the addendum. May contends that paragraphs 7 and 16 of the sales contract remained viable following execution of the addendum. Barker asserts, to the contrary, that the addendum effectively canceled the provisions of paragraphs 7 and 16. We agree with Barker.

The two related paragraphs addressing the amount of Barker's commission and the circumstances under which he was entitled to receive it constituted a single agreement regarding Barker's compensation. The addendum provided altogether new terms and conditions respecting this compensation. The settlement date was delayed until April 13, 1990. The $100,000, labeled a deposit and held in escrow under the sales contract, was ''released'' to May. The Buyer

agreed to pay May $250,000 upon execution of the addendum, followed by an additional payment of $300,000. In the event of default, the deposit would no longer be considered liquidated damages, half of which would go to Barker. Rather, the deposit would be used to compensate May "for actual reasonable damages sustained as the result of Buyer's default."

■ These provisions in the addendum clearly altered and, in fact, eliminated some of Barker's rights to compensation from those originally agreed to in the sales contract. This change canceled the special agreement and resulted in the reinstatement of the provisions of the Maryland statute, thereby vesting in Barker the right to a commission from the time the sales contract was executed and delivered.

■ This conclusion is also consistent with the testimonial evidence. Under the well-established standard of appellate review, we must view this evidence in the light most favorable to Barker because Barker prevailed at trial. In so doing, we conclude that May intended for Barker to receive a commission of $250,000 for the services Barker had performed, irrespective of whether the Buyer subsequently defaulted and failed to settle. Immediately after the addendum was executed, May paid Barker $100,000 as part payment on the commission. Additionally, the evidence established that May's principal told a Barker employee that, in the event the Buyer defaulted, a portion of May's damages would be the remaining $150,000 that May owed Barker as the brokerage commission. The Barker employee also testified that May's principal told him that May always intended to pay Barker the full brokerage fee of $250,000.

■ We conclude, therefore, that there is no "special agreement," written or oral, that supersedes the provisions of the Maryland statute. Thus, pursuant to the Maryland statute, Barker earned the agreed commission of $250,000. As a result of Barker's good faith efforts, the Buyer was procured, and a valid, binding, and enforceable contract was entered into between the Buyer and May. There is no claim that Barker did anything to hinder or prevent performance of the contract.

Accordingly, we will affirm the trial court's judgment.

*Affirmed.*