Present:  All the Justices

MILDRED H. ASHMORE

OPINION BY JUSTICE A. CHRISTIAN COMPTON
v.  Record No. 952137              September 13, 1996

HERBIE MOREWITZ, INC., ET AL.

HERBIE MOREWITZ, INC., ET AL.

v.  Record No. 952155

MILDRED H. ASHMORE

FROM THE CIRCUIT COURT OF THE CITY OF NEWPORT NEWS
Robert W. Curran, Judge

In this creditors' rights controversy arising from a real estate sales transaction, the principal issues are whether fraud has been established in connection with the execution of a subordination agreement and, if so, whether application of the third party beneficiary statute, Code § 55-22, affects the priority of liens.  A subsidiary issue deals with the nature of the fraud.

In April 1994, plaintiff Mildred H. Ashmore filed a bill of complaint against defendants Herbie Morewitz, Inc., Herbert Morewitz, II, Statewide, Inc., Raymond H. Suttle, Jr., Trustee, and Richard M. Macaluso, Trustee.  The plaintiff alleged she is a widow over 70 years of age living alone at the Newport News home formerly owned jointly with her late husband.  Plaintiff asserted she had been living on a fixed income "barely adequate to meet her needs" and, in 1992, decided to convert the subject property into an income producing asset.  The plaintiff alleged she decided to find a purchaser for the property who would buy it "on seller financed terms which would provide her with a stream of

income from note payments secured by a purchase money deed of trust on the Property and at the same time allow her to remain in the Property at a reasonable monthly rental for a period of time."

Plaintiff further alleged that, based on prior contact with defendant Herbert Morewitz, II, "she believed him to be an astute and experienced real estate investor who regularly bought and sold properties as part of his business." Plaintiff also alleged that, responding to her request, Morewitz came to her home to discuss the matter. He presented her with a real estate purchase contract setting forth terms of a proposed sale of the property to defendant Herbie Morewitz, Inc., "a corporation solely owned and controlled by Morewitz."

The plaintiff alleged that, in accord with the contract, she executed and delivered a deed of bargain and sale dated in November 1992 conveying the property to Herbie Morewitz, Inc. (hereinafter, the corporation). At the same time, the corporation made and delivered a purchase money promissory note in the sum of $82,000 payable to the plaintiff's order. This note was secured by a first lien purchase money deed of trust made by the corporation conveying the property in trust to defendant Suttle and another as trustees to secure payment of the note. The deed and deed of trust were duly recorded.

The plaintiff further alleged that Morewitz "assured" her that she would always have a first lien deed of trust on the

- 2 -

property as security for payment of the note.  She also alleged that Morewitz never asked her to subordinate the deed of trust to a later deed of trust on the property.

The plaintiff further alleged that she "happened to be in Morewitz's office" on March 24, 1993 when he said "he had `sold the paper' related to the Property and needed for her to sign a document connected with that activity."  She asserted Morewitz presented her with a single sheet of paper bearing a line for her signature and containing two blank acknowledgement forms.  She alleged Morewitz did not tell her that the sheet, which she signed, was actually the last page of a three-page document.

The plaintiff alleged she later learned, when the corporation became delinquent in the payment of the note, that the document was an agreement in which she consented to the subordination of the lien of the purchase money deed of trust to the lien of another deed of trust on the property from the corporation to defendant Macaluso, Trustee, securing a note made by the corporation in the principal sum of $52,500 payable to defendant Statewide, Inc.  Both the subordination agreement and the other deed of trust had been recorded.

The plaintiff alleged the subordination agreement was void due to fraud of Morewitz and the corporation.  She further alleged that Statewide was a third party beneficiary of the purported agreement and, as such, takes its interest in the property subject to any defenses which she may have against the

corporation. She asserted that Statewide's rights under the purported agreement can rise no higher than the rights of the corporation under such instrument.

In the prayer to the bill of complaint, the plaintiff asked that the subordination agreement be declared void and that she be declared the holder of the first lien deed of trust on the property.

In a responsive pleading, Morewitz, "individually and as President & Agent of Herbie Morewitz, Inc.," denied the allegations of fraud. He affirmatively asserted that he advised the plaintiff "to seek counsel if she did not understand the subordination agreement" and that trustee Suttle "verified" with the plaintiff "that she had, in fact, signed [the] agreement and understood its content." Morewitz asked the court to dismiss the bill of complaint, issue an order allowing him access to the property to facilitate its sale, and order the plaintiff to vacate the property.

The trial court considered testimonial and documentary evidence in an ore tenus hearing in January 1995. Subsequently, in an October 1995 final decree, the court ruled that the plaintiff's signature to the subordination agreement was obtained by the fraud of Morewitz acting on behalf of the corporation, that the fraud made the agreement voidable, that no evidence was produced to establish any knowledge of the fraud by Statewide, and that the plaintiff's request to be declared holder of a first

lien deed of trust on the property was denied.

We awarded separate appeals to the plaintiff, on one hand, and to the corporation and Morewitz, on the other, consolidating them for argument. The plaintiff contends the trial court erroneously determined that even though her execution of the subordination agreement was induced by the fraudulent misrepresentations of Morewitz, this rendered the agreement voidable rather than void. The plaintiff also contends the trial court erroneously found that the rights of Statewide under the agreement were not affected by Morewitz's fraud and that Statewide did not take its interest in the property subject to the defense of fraud which plaintiff had against the corporation.

In the cross appeal, the corporation and Morewitz contend the trial court erred in finding that fraud had been proved by clear and convincing evidence.

The record on appeal does not include a verbatim transcript of the testimony at trial, only a Rule 5:11(c) written statement of facts in lieu of a transcript. Many of the relevant facts were disputed but, applying settled appellate principles, we accord the judgment of the trial court, including the court's findings of fact that are supported by credible evidence, a presumption of correctness. Thus, we shall recite such facts as found by the chancellor.

First, we shall address the issue of law raised in the cross appeal, that is, whether the plaintiff proved fraud by the

requisite clear and convincing evidence.

The parties' evidence essentially supported the allegations made in their pleadings.  The plaintiff established that "on several occasions" after the closing of the sale of the property to the corporation, Morewitz told her "that he might want to borrow against the Property, or `sell the paper,' but assured her that her position would not be changed."  In a letter dated March 18, 1993, Morewitz wrote plaintiff confirming "our conversation in regards to your possible need to occupy the house beyond [a] one year term," stating he was "agreeable" to extending her occupancy "to whatever date you're comfortable with."  In a second paragraph, Morewitz wrote:  "Also, from time to time, I borrow against properties that I own to expand my investment enterprise.  I may borrow against [the subject property] but please know this will not change your position at all."  Morewitz later testified this statement "was in reference to her continued occupancy of the property and to verify that she would continue to receive monthly payments."

Thereafter, in March 1993, Morewitz "sought a loan" for the corporation from Statewide, which advised him that "such a loan" would be made if he "could give Statewide a first lien deed of trust on the Property as security for the loan."  According to the statement of facts, Morewitz then took a subordination agreement, prepared by Statewide's attorney, to the plaintiff, telling her "that the instrument was just a routine document

which would enable him to `sell the paper' related to the Property."  The plaintiff, who was "unsophisticated in such matters," relied on Morewitz and executed the subordination agreement.  She testified that the pages of the document "were not attached to each other and she signed the signature page without reading the document."  During cross-examination, the plaintiff, when asked, "Did you read the document at all before signing it?" replied, "I read it, but not carefully."

Trustee Suttle, who testified Morewitz had written him a memo suggesting he call the plaintiff "to ensure that she understood the agreement," stated that when the document was presented for his signature, he telephoned the plaintiff and explained to her "that the effect of this subordination agreement was that she would now be in a second lien position, not first." Disputing this testimony, the plaintiff testified she never spoke to Suttle about "subordinating her deed of trust to another deed of trust."  The chancellor found the telephone call took place but that the plaintiff "failed to understand the legal effect of the document because of the fraudulent misrepresentations which Morewitz had previously made to her."

The plaintiff also established that she later found in her files the draft of an unsigned subordination agreement like the document she signed.  The unsigned document, however, contained "an extra sentence" stating, "Notice:  The original agreement between Herbie Morewitz, Inc. and Mildred H. Ashmore is not

diminished or affected by this document." The plaintiff did not know how or when the document came into her possession, stating "it may have come from Mr. Morewitz's office." The plaintiff admitted she did not rely on the extra sentence when she signed the agreement.

Morewitz testified that the extra sentence appeared to be on a "working" or "rough draft" copy of the agreement, and that he did not recall making any alteration to the copy prepared by Statewide's attorney. According to the statement of facts, Morewitz "did not absolutely deny" making the alteration, "because he could not recall this sentence at all."

A party seeking to establish fraud must prove by clear and convincing evidence a false representation, of a material fact, made intentionally and knowingly, with the intent to mislead, reliance by the party misled, and resulting damage to such party. Thompson v. Bacon, 245 Va. 107, 111, 425 S.E.2d 512, 514 (1993). Clear and convincing evidence is that degree of proof which will produce in the mind of the trier of facts a firm belief or conviction concerning the allegations sought to be established. Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975). Viewing the facts, as we must, in the light most favorable to the plaintiff who prevailed below on this issue, we hold that the plaintiff's proof burden has been carried on the fraud question.

There was credible, clear and convincing evidence to support

the trial court's finding that Morewitz, intentionally and knowingly with the intent to mislead, falsely represented material facts to the plaintiff, that is, her first lien "position" would not be changed if he "sold the paper" and the subordination agreement "was just a routine document" enabling him to "sell the paper." Further, such evidence supports the court's implicit findings that plaintiff relied on the false representation and was relegated to a second lien position to her detriment as the result of executing the subordination agreement. Thus, we hold there is no merit in the cross appeal.

Turning next to the plaintiff's contention that the nature of the fraud made the agreement void, and not voidable, we hold the trial court correctly ruled the agreement was voidable.

When a promisor knows what is being signed but the promisor's consent is induced by fraud, mutual consent is present and a contract is formed, which, because of the fraud, is voidable. In other words, "the act of the defrauded person is operative though voidable." 12 Williston on Contracts § 1488, at 332 (3d ed. 1970).

On the other hand, if the fraud operates at the inception of the agreement so that the promisor actually does not know what is being signed, or does not intend to enter into a contract at all, mutual assent is lacking and the act of the promisor is void; the purported agreement may be disregarded without the necessity of rescission. Id. See Elam v. Ford, 145 Va. 536, 545, 134 S.E.

670, 672 (1926).

In the present case, the trial court found that the plaintiff knew she was signing a subordination agreement, but that she would not have so acted without Morewitz's misrepresentations regarding its legal effect on her position of priority. The court thus found, obviously with the foregoing principles in mind, "that this is the case where the act of the defrauded person is operative though voidable." There is credible evidence to support such finding.

Finally, we address the plaintiff's alternative argument that, even if the trial court correctly ruled the agreement is voidable, the court nonetheless erred in refusing to apply Code § 55-22 and to rule Statewide took its interest in the property subject to the defense of fraud that she had against the corporation. We agree with the plaintiff.

> Code § 55-22, the third-party beneficiary statute, provides: "An immediate estate or interest in or the benefit of a condition respecting any estate may be taken by a person under an instrument, although he be not a party thereto; and if a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well."

This statute enables a third party to take an interest under an

instrument, although not a party to it, if the promise is made for the third party's benefit and the evidence shows that the contracting parties clearly and definitely intended to confer a benefit upon such third party. Kelley v. Griffin, 252 Va. 26, 29, 471 S.E.2d 475, 477 (1996).

In the present case, the evidence is clear that the subordination agreement between the plaintiff and the corporation is intended to confer a benefit upon Statewide, a nonparty. Under that agreement, Suttle as trustee and plaintiff as beneficiary of the November 1992 deed of trust agreed that the lien of that deed of trust shall be subordinated to and in favor of the other deed of trust, dated in March 1993, securing the debt to Statewide, which actually is named in the body of the subordination agreement. Thus, under Code § 55-22 Statewide could enforce the subordination agreement against the plaintiff.

But the last sentence of Code § 55-22 further provides that the plaintiff, as covenantor or promisor of the instrument, shall be permitted to make all defenses she may have against Statewide, the third-party beneficiary. In other words, the third-party beneficiary's rights under the instrument, according to the statute, can rise no higher than the rights of the corporation, the covenantee or promisee under the instrument. Thus, we hold that Statewide took its interests under the subordination agreement subject to the plaintiff's right to rescind the agreement because of Morewitz's fraud, even though Statewide had

no knowledge of the fraud.

Accordingly, we will affirm so much of the final decree which finds that the plaintiff's signature on the subordination agreement was obtained by the fraud of Herbert Morewitz, II, acting on behalf of Herbie Morewitz, Inc., and which finds that the fraud made the agreement voidable.  Parenthetically, we find no merit in a contention made by the corporation and Morewitz that the form of this portion of the decree is erroneous.

We will reverse the remainder of the final decree.  We will enter final judgment here setting aside the subordination agreement and declaring the plaintiff to be the holder of a first lien deed of trust on the subject property.

Record No. 952137 – <u>Affirmed in part, reversed in part, and final judgment</u>.

Record No. 952155 – <u>Affirmed</u>.