701 A.2d 1213

**GENERAL INSURANCE COMPANY OF AMERICA, et al.**

v.

**INTERSTATE SERVICE COMPANY, INC.**

**No. 163, Sept. Term, 1997.**

Court of Special Appeals of Maryland.

Nov. 3, 1997.

Stephen M. Seeger (Quagliano & Seeger, on the brief), Washington, DC, for appellants.

Van Powers, Hyattsville, for appellee.

Argued before CATHELL, EYLER and THIEME, JJ.

EYLER, Judge.

This case, which is before us for the second time, involves application of the *Restatement (Second) of Conflict of Laws* § 187(2)(b) (1971). In particular, we must decide whether to enforce contractual limitations provisions that are against Maryland public policy when the contracts at issue provide that the laws of Virginia and the District of Columbia shall govern. Because we cannot say that Maryland has a materially greater interest in the determination of the issue than do Virginia and the District of Columbia, we will apply the laws of Virginia and the District of Columbia, uphold the contractual limitations provisions, and reverse the judgment of the trial court.

## *Facts*

Appellee Interstate Service Company, Inc. ("Interstate") is a mechanical subcontractor who, pursuant to subcontracts with NICO Construction Co. ("NICO"), performed work on five separate construction projects located in the District of Columbia and the Commonwealth of Virginia. Appellant General Insurance Company of America ("General") issued to NICO a performance and payment bond on the project located at Georgetown University Hospital in the District of Columbia ("Georgetown bond"), while Westchester Fire Insurance Company ("Westchester") issued to NICO a performance and payment bond on the project located at Alexandria Hospital in Virginia ("Alexandria bond").

Interstate last performed work on the Georgetown University project on July 29, 1991, and NICO certified that the project was 100% complete on January 8, 1992. By letter

dated April 9, 1992, Interstate sent notice to NICO and General of its claim on the Georgetown payment bond.

Interstate last performed work on the Alexandria Hospital project on February 27, 1991, and NICO certified that the project was 100% complete on December 26, 1991. By letter dated April 20, 1992, Interstate sent notice to NICO and Westchester of its claim on the Alexandria bond.

On September 9, 1992, Interstate filed an action in the Circuit Court for Prince George's County against NICO for nonpayment on the two projects, and on November 19, 1993, Interstate filed an amended complaint adding claims against General and Westchester for breach of the payment bonds.

On August 9, 1994, pursuant to a settlement agreement between the two parties, Interstate obtained a judgment against NICO in the amount of $321,742.86. Although the settlement did not resolve the issue of the respective liabilities of General and Westchester on the bonds, the sureties did agree, at the request of the settling parties, that they would not invoke the forum selection clauses contained in the bonds.[1]

Thereafter, General and Westchester filed a motion for summary judgment based upon one year limitations of actions provisions located in each of the payment bonds. Specifically, the Georgetown bond stated in pertinent part:

No suit or action shall be commenced by a Claimant under this Bond ... after expiration of one year from the date ... on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract.... If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

The Alexandria bond provided in pertinent part:

---

1. The Georgetown bond provided that a suit must be filed in a jurisdiction in which "the work or part of the work" is located. The Alexandria bond provided that a suit must be filed in a jurisdiction in which "the project, or any part thereof," is located.

No suit or action shall be commenced hereunder by any claimant: . . . [a]fter the expiration of one (1) year following the date on which Principal ceased Work on said Contract. It being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

In their motion, General and Westchester argued that the trial court should apply Virginia law because the contracts between Interstate and NICO contained choice of law provisions selecting Virginia law, and these contracts were incorporated by reference in the payment bonds. General and Westchester further argued that Virginia law permitted one year contractual limitations provisions. Interstate filed a cross-motion for summary judgment arguing that the trial court should apply Maryland law and that the limitations of actions provisions were void and unenforceable under Maryland law. Interstate alternatively argued that Virginia law would not enforce the contractual limitations provisions. The trial court granted summary judgment in favor of General and Westchester and denied Interstate's motion for summary judgment, and Interstate appealed.

On appeal, in an unreported opinion, we reversed the judgment based upon Md.Code Ann. (1957, 1994 Repl.Vol.), Art. 48A § 377B, which prohibits the enforcement of any provision in an insurance contract that shortens the applicable period of limitation contained in Maryland statutes. We noted that, in the absence of a contractual provision, the period of limitations generally is an issue of procedural rather than substantive law, and accordingly, the law of the forum applies. With respect to General's and Westchester's arguments that the parties had contractually agreed to limit the period of limitations and had selected Virginia law to govern, we noted that the payment bonds did not incorporate the Interstate–NICO contracts. Instead, the payment bonds incorporated the general contracts between NICO and the project owners. As we did not have those contracts before us, and could not ascertain

whether they included choice of law provisions, we had no choice but to remand the case for further proceedings.

On remand, General and Westchester provided the trial court with copies of the general contracts for both the Georgetown and the Alexandria projects. General Conditions Article 19.1 of both the Georgetown and Alexandria contracts provides that "[t]he Contract shall be governed by the law of the place where the Project is located." The location of the Georgetown project is described on the first page of the Georgetown contract as follows: "Modular Laboratories Renovation, Ground Floor and Lower Level, Preclinical Sciences Building, Georgetown University Medical Center." It is undisputed that this location is within the District of Columbia. The location of the Alexandria project is described on the first page of the Alexandria contract as follows: "Renovation to the Third Floor Obstetrical Nursing Unit and Full-term Nursery at the Alexandria Hospital." It is undisputed that this location is within the Commonwealth of Virginia.

Notwithstanding these provisions, the trial court, on remand, held that Maryland law applied to the limitations issue and that Maryland law prohibited the inclusion in an insurance contract of a provision shortening the period of limitations. Consequently, the trial court entered summary judgment in favor of Interstate. Thereafter, General and Westchester filed this timely appeal.

### Standard of Review

Recently, in *Marriott v. Morgan State University*, 115 Md.App. 493, 694 A.2d 123 (1997), we reviewed the principles governing appellate review of a grant of summary judgment as follows:

Rule 2–501(e) directs the trial court to grant summary judgment in favor of the movant "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Under the summary judgment rule, a trial court does not resolve

disputed issues of fact, but instead, makes rulings as a matter of law. *Southland Corp. v. Griffith*, 332 Md. 704, 712 [633 A.2d 84] (1993); *Beatty v. Trailmaster Prods., Inc.*, 330 Md. 726, 737 [625 A.2d 1005] (1993). Thus, the standard for appellate review of a grant of summary judgment is whether the trial court was legally correct. *Griffith*, 332 Md. at 712 [633 A.2d 84]; *Beatty*, 330 Md. at 737 [625 A.2d 1005].

*Marriott*, 115 Md.App. at 501–502, 694 A.2d 123.

### *Discussion*

As we noted upon the first appeal of this case, in the absence of contractual provisions that would produce a contrary result, the statute of limitations applicable to the payment bonds is twelve years. *See* Md.Code Ann. (1974, 1995 Repl.Vol.), Cts. & Jud. Proc. § 5–102(a)(2). *See also Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438 (1959) (holding that statutes of limitations are matters of procedural law governed by the law of the forum state); *Mandru v. Ashby*, 108 Md. 693, 695, 71 A. 312 (1908)(holding that procedural matters are governed by the law of the forum). Further, while both of the payment bonds purport to shorten the limitations period, such a shortening is prohibited by Maryland law. Specifically, Article 48A, § 377B of the Maryland Code provides as follows:

All provisions and stipulations contained in any contract of insurance or suretyship, whatsoever, heretofore or hereafter issued, fixing the time in which suits or actions may be instituted under or upon any such contracts at a period of time less than that provided at the time of the issuance or delivery of any such contract by the laws of the statutes of Maryland in respect of limitations are hereby declared to be against State public policy, illegal and void, and no court in this State shall give any effect to any provisions or stipulation in any contract mentioned in this section; nor shall any defense to liability under any such contract be based upon any such shorter limitation period.

Md.Code (1957, 1994 Repl.Vol.). Accordingly, if Maryland law is controlling, the contractual limitations provisions are not valid, and Interstate's claims on the bonds are not barred by limitations.

■ By contrast, the District of Columbia does not have a statute prohibiting contractual limitations provisions, either generally, or in insurance contracts.[2] Similarly, it has not pronounced in case law any public policy prohibiting enforcement of such agreements. Accordingly, the contractual limitations provision in the Georgetown bond is valid under District of Columbia law.

Virginia law provides that parties to a contract, including an insurance contract, "may agree that a claim under the contract must be enforced within a shorter time limit than that fixed by statute if the contractual provision is not against public policy and if the agreed time is not unreasonably short." *Board of Supervisors of Fairfax County v. Sampson*, 235 Va. 516, 369 S.E.2d 178, 180 (1988). More specifically, § 38.2–314 of the 1950 Code of Virginia (1994 Repl.Vol.) provides as follows:

No provision in any insurance policy shall be valid if it limits the time within which an action may be brought to less than one year after the loss occurs or the cause of action accrues.

Neither the parties nor the trial court discussed this statute below, and neither discussed the issue of when Interstate's cause of action under the Alexandria bond accrued. The record before us, however, contains everything that we require to resolve that issue.

Interstate last performed work on the Alexandria Hospital project on February 27, 1991, and NICO certified that the project was 100% complete on December 26, 1991. The contractual limitations provision of the Alexandria bond shortens limitations to one year from NICO's completion of the

---

**2.** Section 28:2–725 of the 1981 District of Columbia Code, the only statute dealing with contractual limitations, provides that in actions for breach of any contract of sale, the parties, by agreement, may reduce the four year period of limitations to not less than one year, but may not extend it.

project, or December 26, 1992. While we cannot be certain whether Interstate's cause of action accrued prior to or after NICO's completion of the project, it accrued, at least, by April 20, 1992, the date that Interstate notified NICO and Westchester of its claim, or at the very latest, by September 9, 1992, the date on which Interstate filed suit against NICO. Given that the limitations provision conforms the limitations to Virginia law in the event it is invalid under Virginia law, the time for filing a claim on the bond could have been shortened to April 20, 1993 or, at the very latest, September 2, 1993. Yet, Interstate's claim against Westchester was not filed until November 19, 1993. Thus, assuming Virginia law applies and the contractual limitations provision is enforceable against Interstate, a third party beneficiary of the Alexandria bond, Interstate's action on the bond is barred by the contractual limitations provision.

■    Before we turn to the issue of whether we are bound to apply the laws of the District of Columbia and Virginia, we first must consider whether either District of Columbia or Virginia law would enforce a contractual limitations provision against a third party beneficiary such as Interstate. The trial court did not discuss District of Columbia law on this issue, but relying on *Commercial Construction Specialties, Inc. v. ACM Construction Management Corporation*, 242 Va. 102, 405 S.E.2d 852 (1991), the court did hold that Virginia law would not enforce the provision against Interstate.

*Commercial Construction Specialties* involved an action by a subcontractor on a public construction project for enforcement of certain payment bonds between the general contractor and its surety. The Virginia Public Procurement Act, Virginia Code § 11–60, provides materialmen and subcontractors, who have furnished supplies for or worked on a public construction project, with a right to sue on the payment bonds issued on such projects, provided certain notice requirements have been met. *Id.* 405 S.E.2d at 853–54. The bonds at issue in *Commercial Construction Specialties* shortened the § 11–60 notice period from 180 days to 90 days. The Supreme

Court of Virginia noted that the subcontractor was not a party to the payment bonds, and held that the general contractor and surety could not shorten the notice requirements of § 11–60 without obtaining the subcontractor's consent. *Id.* 405 S.E.2d at 854. In particular, the Court rejected the defendants' reliance on *Sampson, supra.*

■ While, at a glance, *Commercial Construction Specialties* seems to support the trial court's holding that the Alexandria bond limitations provision is not enforceable against Interstate, Interstate does not, and could not, purport to sue under § 11–60. Instead, Interstate's action is based upon its status as a third party beneficiary to the payment bonds. Under Virginia law, an intended third party beneficiary to a contract is entitled to enforce the terms of the contract *and is subject to all defenses arising out of the contract.* *See, e.g., Ashmore v. Herbie Morewitz, Inc.,* 252 Va. 141, 475 S.E.2d 271, 275–76 (1996); *Levine v. Selective Insurance Co. Of America,* 250 Va. 282, 462 S.E.2d 81, 84 (1995); *Sydnor & Hundley, Inc. v. Wilson Trucking Corp.,* 213 Va. 704, 194 S.E.2d 733, 736 (1973); 1950 Code of Virginia § 55–22 (1995 Repl.Vol.). Specifically, § 55–22 provides in pertinent part as follows:

> ... [I]f a covenant or promise be made for the benefit, in whole or in part, of a person with whom it is not made, or with whom it is made jointly with others, such person, whether named in the instrument or not, may maintain in his own name any action thereon which he might maintain in case it had been made with him only and the consideration had moved from him to the party making such covenant or promise. In such action the covenantor or promisor shall be permitted to make all defenses he may have, not only against the covenantee or promisee, but against such beneficiary as well.

So, for example, in *Ashmore,* although the third-party beneficiary was unaware of the promisee's fraud, the beneficiary's action against the promisor was subject to the promisor's right to rescind for fraud.

Considered against this backdrop, the holding of *Commercial Construction Specialties* takes on a different significance. The Court in *Commercial* noted that § 11–60 is remedial in nature and must be liberally construed in favor of materialmen and subcontractors. 405 S.E.2d at 854. Further, the Court explained that the protection afforded by § 11–60 is necessary because, under Virginia law, materialmen and subcontractors are unable to perfect mechanic's liens against public property. *Id.* Accordingly, we read *Commercial* to hold only that the parties to a payment bond may not unilaterally alter a subcontractor's rights under § 11–60. In *Commercial,* the subcontractor's right of action was created by § 11–60, and thus, was governed by § 11–60. Under Virginia law, the contractual limitations provision clearly is enforceable against Interstate.

■ Similarly, the Georgetown bond limitations provision is enforceable against Interstate under District of Columbia law. For some time, the District of Columbia has recognized a right of action for breach of contract by intended third party beneficiaries. *A.S. Johnson Co. v. Atlantic Masonry Co.,* 693 A.2d 1117, 1122 (D.C.1997); *District of Columbia v. Campbell,* 580 A.2d 1295, 1302 (D.C.1990); *Bay General Industries, Inc. v. Johnson,* 418 A.2d 1050, 1055 (D.C.1980); *Aetna Casualty & Surety Co. v. Kemp Smith Co.,* 208 A.2d 737, 738–39 (D.C. 1965). While it appears that the District of Columbia has not squarely addressed the issue of whether a third party beneficiary's rights under the contract are subject to all defenses arising out of the contract, the District of Columbia Court of Appeals appears at least implicitly to have adopted that rule. In *Kemp Smith Co.,* it relied on the Restatement (First) of Contracts §§ 133–147 and stated that it was adopting "the [third party beneficiary] rule followed by the majority of jurisdictions in this country." 208 A.2d at 738–39. Under this rule, the third party beneficiary's rights are no more extensive than those rights provided by the express terms of the contract and are subject to all defenses arising out of the contract. *See* Restatement (First) of Contracts § 140; Restatement (Second) of Contracts § 309. *See also Schrier v.*

*Beltway Alarm Co.,* 73 Md.App. 281, 299–300, 533 A.2d 1316 (1987) (quoting Farnsworth, Contracts § 10.7 (1982) and Williston on Contracts § 378 (1979)).

■ We now turn to whether we are bound to apply the laws of the District of Columbia and Virginia. The Court of Appeals has noted that "it is 'generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract.' " *National Glass, Inc. v. J.C. Penney Properties, Inc.,* 336 Md. 606, 610, 650 A.2d 246 (1994) (quoting *Kronovet v. Lipchin,* 288 Md. 30, 43, 415 A.2d 1096 (1980)). This general principle, however, is subject to the limitations set forth in Restatement (Second) Conflict of Laws § 187:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

>> (a)the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

>> (b)application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

*See National Glass,* 336 Md. at 610–11, 650 A.2d 246 (quoting Restatement (Second) Conflict of Laws § 187(2) (Supp.1989)). Comment d to this section explains that subsection (2) applies when

it is sought to have the chosen law determine issues which the parties could not have determined by explicit agreement directed to the particular issue. Examples of such questions are those involving capacity, formalities and substantial validity. A person cannot vest himself with contractual capacity by stating in the contract that he has capacity. He cannot dispense with formal requirements, such as that of a writing, by agreeing with the other party that the contract shall be binding without them. Nor can he by a similar device avoid issues of substantial validity, such as whether the contract is illegal.

In this case, General and Westchester seek to apply District of Columbia and Virginia law in order to determine the validity of the limitations provision. Accordingly, we must analyze the choice of law issue in accordance with § 187(2). More specifically, as it cannot seriously be contended that the District of Columbia and Virginia, the sites of the projects, have "no substantial relationship to the parties or the transaction," we must analyze the question in accordance with § 187(2)(b).

In the instant case, application of the laws of the chosen states would be contrary to a fundamental policy of Maryland as embodied in Article 48A, § 377B. In this case, the law of Maryland is not merely dissimilar to the laws of the District of Columbia and Virginia. Instead, the Maryland statute expressly states that contractual limitations provisions in insurance contracts are "against State public policy, illegal and void. . . ." The statute further directs that "no court in this State shall give any effect" to such provisions. *See Bethlehem Steel Corp. v. G.C. Zarnas & Co.*, 304 Md. 183, 189–90, 498 A.2d 605 (1985). Indeed, on the first appeal of this case, we held that enforcement of the limitations provision would be against the strong public policy of Maryland, and appellants concede that we are bound by that determination. Our inquiry does not end here, however. Instead, we must now determine whether Maryland has a materially greater interest in the determination of the issue than do the District of Columbia and Virginia. *See National Glass*, 336 Md. at 615, 650

A.2d 246. Applying the above principles to the facts of this case, we hold that it does not.

The record reflects the following. Interstate understood that it was to perform work in the District of Columbia and Virginia, and it consented to application of the law of those jurisdictions. The work was in fact performed in the District of Columbia and Virginia, and none was performed in Maryland. Similarly, the bonds were not issued in Maryland and were not to be performed in Maryland. The bonds expressed a suretyship obligation which arose in the foreign jurisdictions, the place of performance of the underlying contracts and the location of the primary obligation. The only contact with Maryland is that Interstate is a Maryland corporation and the other parties and NICO, none of which are residents of Maryland, expressly consented to Maryland as the forum state. Finally, it is noteworthy that, with respect to the Alexandria bond, Virginia law expressly permits a limitation of actions provision; it is not merely silent. *See* § 38.2–314 of the 1950 Code of Virginia (1994 Repl.Vol.); *Bethlehem Steel v. G.C. Zarnas & Co.*, 304 Md. at 191, 498 A.2d 605 ("In the present case, however, the parties contracted in Pennsylvania to do something which Pennsylvania common law merely tolerates. No Pennsylvania statute expressly creates a right of the parties to so contract." (footnotes omitted)). The law of the District of Columbia and Virginia is deserving of enforcement when Maryland has no materially greater interest in the issue than do those states.

The decisions in *National Glass v. J.C. Penney*, 336 Md. 606, 650 A.2d 246, and *Bethlehem Steel v. G.C. Zarnas & Co.*, 304 Md. 183, 498 A.2d 605, relied on by appellee, are distinguishable. In *National Glass*, the issue before the Court of Appeals was whether a provision in the Maryland Mechanic's Lien Law, Real Property § 9–113, voids a provision in a contract wherein the subcontractor waived its right to claim a mechanic's lien. The contract provided that the construction would be performed in Maryland and that Pennsylvania law would govern. Pennsylvania law permits such a waiver. The Court of Appeals applied Restatement (Second), Conflict of

Law § 187(2) and held that the contractual provision was unenforceable in Maryland. In doing so, the Court stated:

> Thus, because Maryland has a strong public policy protecting subcontractors against contractual provisions waiving the right to claim a mechanic's lien and because the property in which the Maryland subcontractor seeks to establish a mechanic's lien is located in Maryland, it is evident that Maryland's interest in the determination of the issues in the present case is materially greater than that of Pennsylvania.

*National Glass,* 336 Md. at 616, 650 A.2d 246. In contrast, in the case before us, the projects were not located in Maryland, and the work was not to be performed nor was it in fact performed in Maryland.

In *Bethlehem Steel,* the issue before the Court of Appeals was

> whether a provision of a construction contract executed in Pennsylvania, whereby the promisor agreed to indemnify the promisee against liability for damages resulting from the sole negligence of the promisee, is so contrary to Maryland public policy that it is unenforceable in a Maryland court.

304 Md. at 185, 498 A.2d 605. The Maryland statute at issue provided that a provision in a construction contract purporting to indemnify the promisee against liability for damages caused by the sole negligence of the promissee was void and unenforceable. Bethlehem Steel contended that, under Maryland choice of law rules, the validity of the terms of the contract should be determined by Pennsylvania law and that the indemnity provision was valid under Pennsylvania law.[3] The Court of Appeals recognized that the contract was made in Pennsylvania but applied Maryland law and refused to enforce the contractual provision. Again, however, in contrast to the

---

**3.** In the case before us, we need not decide if a limitation of action provision in a contract is substantive or procedural for purposes of applying Maryland's conflict of laws rules in the absence of an express choice of law provision.

case before us, the work to be performed under the contract was to be performed in Maryland.[4]

As noted previously, the only contact with Maryland in this case is that Interstate is a Maryland corporation, and the other parties consented to Maryland as the forum state. When weighed against the contact with Virginia and the District of Columbia, we cannot hold that Maryland has a materially greater interest.

Before concluding this opinion, we dispose of the pending motions. Appellee's motion to dismiss the appeal, based on the late filing of the information report;[5] appellee's motion to strike the information report; appellee's motion to assess counsel fees against appellant; appellee's motion to strike appellants' motion to extend time; appellants' opposition to appellee's motion to dismiss; appellants' opposition to appellee's motion to strike the information report; and appellants' opposition to appellee's motion to assess counsel fees are all denied. Appellants' motion to extend time to file the information report is granted.

For the foregoing reasons, we hold that Interstate's action is barred based on the limitations provisions in the George-

---

4. Appellee cites and appears to rely on the limited renvoi exception to the *lex locus contractus* conflict of law rule recently adopted by the Court of Appeals *See American Motorists Insurance Co. v. ARTRA Group, Inc.*, 338 Md. 560, 659 A.2d 1295 (1995). The limited renvoi exception has not been applied when an express choice of law provision exists. Even if it did apply, it would not change the result herein. See *Norris v. Norris*, 419 A.2d 982, 984 (D.C.1980) (parties to a contract may specify the law they wish to govern, as part of their freedom to contract, as long as there is some relationship with the state specified); *Hooper v. Musolino*, 234 Va. 558, 364 S.E.2d 207 (1988) (express choice of law provision effective if the state bears a reasonable relationship to the transaction). Absent a choice of law provision, the District of Columbia generally follows the most significant contacts rule. *DeMontmorin v. DuPont*, 484 A.2d 582, 585 (D.C.1984), and Virginia generally applies the law of the place where the contract is made and is to be performed. *May Partnership v. Barker*, 246 Va. 61, 431 S.E.2d 331 (1993).

5. See Rule 8–205. The information report was due on November 4, 1996 and was filed on November 13, 1996.

town and Alexandria bonds, and we reverse the judgment of the trial court.

**JUDGMENT REVERSED;  COSTS TO BE PAID BY APPELLANTS.**