# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

CHOICE HOTELS INTERNATIONAL,
INCORPORATED,

*Plaintiff-Appellee,*

v.

CHEWL'S HOSPITALITY, INCORPORATED,
A VIRGINIA CORPORATION; SUKHDEV
CHEWL,

*Defendants-Appellants.*

No. 02-1855

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Alexander Williams, Jr., District Judge.
(CA-02-201-AW)

Argued: October 31, 2003

Decided: December 17, 2003

Before LUTTIG and SHEDD, Circuit Judges, and
James H. MICHAEL, Jr., Senior United States District Judge
for the Western District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Onkar Nath Sharma, SHARMA & BHANDARI, Silver
Spring, Maryland, for Appellants. Kerry Shanahan McGeever, Legal
Department, CHOICE HOTELS INTERNATIONAL, Silver Spring,
Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

Chewl's Hospitality, Inc. and Sukhdev Chewl (collectively, "Chewl") appeal from the judgment of the district court confirming an arbitration award in favor of Choice Hotels International, Inc. ("Choice Hotels"). Chewl argues that the arbitration award should be set aside because (1) the arbitration clause is unconscionable, (2) the contractual liquidated damages clause in the underlying contract is an unenforceable penalty, and (3) Choice Hotels cannot recover both liquidated damages and damages for trademark infringement. We conclude that Chewl has failed to establish grounds to vacate the arbitration award under the Federal Arbitration Act, and we affirm the judgment of the district court.

I.

Chewl operated a Quality Inn hotel in Roanoke, Virginia pursuant to a franchise agreement with Choice Hotels. Under that agreement, Chewl was entitled to operate a hotel using Choice Hotels' "Quality" trademarks in exchange for payment of fees and royalties. The agreement took effect in March 1999; although the agreement had a term of twenty years, either party could terminate the agreement without cause at any point after five years. The agreement authorized Choice Hotels to terminate the agreement in the event that Chewl failed to operate its hotel in accordance with the terms of the agreement.

Under the franchise agreement, Chewl was required to install new bedding in its hotel rooms; install a deluxe complimentary breakfast; repair, seal, and stripe the parking areas; and make landscaping improvements on the property. In the event that Choice Hotels determined that Chewl had not met these requirements, the agreement provided that Choice Hotels would give Chewl a 30-day cure period. Choice Hotels was authorized to terminate the agreement if Chewl failed to satisfy its improvement obligations within that period.

In July 1999, a Choice Hotels official inspected the hotel and found that Chewl had not satisfied its repair and improvement obligations. A Chewl representative accompanied the Choice Hotels official during the inspection and certified that its findings were accurate. The Choice Hotels official returned to the property in September 1999 and found that Chewl still had not made the required improvements. Pursuant to the agreement, Choice Hotels sent Chewl a notice of default demanding that Chewl make the necessary improvements within 30 days or face possible termination. In November 1999 — after this initial cure period had expired — Choice Hotels performed a third inspection of the Chewl property and again found that Chewl was in default of its capital improvement obligations. Again Choice Hotels sent Chewl a notice of default, giving Chewl another 30 days to make the required repairs. Choice Hotels returned to the property after the expiration of this second cure period. The property still failed inspection, and the Choice Hotels official recommended terminating the franchise. In May 2000, Choice Hotels terminated the agreement based upon Chewl's uncured defaults. Contrary to the terms of the agreement, Chewl continued to use the Quality trademark after its franchise was terminated.

The franchise agreement included the following arbitration provision:

> Except for our claims against you for indemnification, actions for collection of moneys owed under this Agreement, or actions seeking to enjoin you from using the [trademarks] in violation of this Agreement, any controversy or claim arising out of or relating to this Agreement, or the breach of this Agreement, including any claim that this Agreement, or any part of this Agreement is invalid, illegal, or otherwise voidable or void, will be sent to final and binding arbitration in accordance with the Commercial Arbitration Rules of the American Arbitration Association or J.A.M.S./Endispute . . . . The arbitrator will apply the substantive laws of Maryland, without reference to its conflict of laws provision . . . . Any arbitration will be conducted at our headquarters office in Maryland.

The agreement also provided that Choice Hotels would be entitled to liquidated damages in the event of termination occasioned by Chewl's default:

> If we terminate this Agreement due to your default after the Opening Date, you will pay us, within 30 days after termination, as liquidated damages and not as penalty for premature termination, the product of (i) the average monthly Gross Room Revenues during the prior 12 full calendar months . . . multiplied by (ii) the Royalty fee payable in the Remaining months (as defined below), multiplied by (iii) the number of months until the next date that you could have terminated this Agreement without penalty ('Remaining Months'), not to exceed 36 months. However, the product of (i) multiplied by (ii) will not be less than the product of $40.00 multiplied by the Rentable Rooms.

Chewl filed suit in Virginia state court to compel reinstatement of the franchise agreement. Choice Hotels removed the case to federal court and moved to compel arbitration. Chewl did not contest arbitrability, and the case was dismissed. In October 2000, Choice Hotels filed its arbitration demands with the American Arbitration Association ("AAA"). Choice Hotels sought liquidated damages resulting from termination of the agreement, as well as damages for trademark infringement, interest, and fees. Chewl filed a response and a counterclaim in November 2000. Chewl made no objection to the arbitrability of Choice Hotels' claims at that time.

In September 2001 — after ten months of discovery and only one month before the arbitration hearing was scheduled to take place — Chewl filed an objection challenging the arbitrability of the claims at issue and the jurisdiction of the AAA. After two days of hearings, the arbitrator issued an award in favor of Choice Hotels for $196,992 in liquidated damages; $32,042.60 in damages for trademark infringement; $10,245 in attorneys' fees; and $1,379.52 in costs.

Choice Hotels moved the district court to confirm the arbitration award, and Chewl moved to vacate it. The district court held a hearing and then granted the motion to confirm the award. This appeal followed.

## II.

Following the Supreme Court's direction to "apply ordinary, not special, standards when reviewing district court decisions upholding arbitration awards," we review the district court's findings of fact for clear error and its legal conclusions *de novo*. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 948 (1995).

### A.

At the outset, Chewl challenges the authority of the arbitrator to decide the claims asserted by Choice Hotels. Assuming that this objection was properly preserved for review,[1] we must decide (1) whether there existed a valid, enforceable agreement to arbitrate and (2) whether Choice Hotels' claims fell within the scope of that agreement. *See Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999).

### 1.

The arbitration provision at issue in this case is contained in a contract evidencing a transaction involving commerce, so the Federal Arbitration Act ("FAA") applies. *See* 9 U.S.C. § 2. Under the FAA, a written agreement to arbitrate in a "contract evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." *Id.* Thus, the enforceability of an arbitration provi-

---

[1] Chewl consented to arbitration and litigated this case in arbitration for nearly ten months before raising any objection to arbitration. Moreover, Chewl asserted a counterclaim for damages during the arbitration. These facts suggest that Chewl, by its conduct, consented to arbitration. *See Rock-Tenn Co. v. United Paperworkers Int'l Union, AFL-CIO*, 184 F.3d 330, 334 (4th Cir. 1999). Shortly before the arbitration hearing commenced, however, Chewl changed its position and objected to the arbitrability of Choice Hotels' claims. Thus, the issue was presented to the arbitrator. Because we conclude that the arbitrator properly disposed of Choice Hotels' claims, we do not decide here whether an objection to arbitrability made after months of participation in arbitration proceedings is timely made.

sion is determined by "ordinary rules of contract interpretation, augmented by a federal policy requiring that all ambiguities be resolved in favor of arbitration." *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 710 (4th Cir. 2001).

Chewl attacks the validity of the arbitration agreement on the ground that the choice-of-law and choice-of-forum clauses of the relevant provision are "unjust" and "unconscionable" as contracts of adhesion. We apply general principles of contract law to determine whether the arbitration agreement at issue here was a contract of adhesion or otherwise unconscionable.

Chewl contends that Virginia law should govern its dispute with Choice Hotels, while Choice Hotels argues that the franchise agreement calls for application of Maryland law. Because this diversity suit was filed in Maryland, we apply that state's choice of law rules to determine the applicable law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941). Under Maryland law, "it is generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *General Ins. Co. of Am. v. Interstate Serv. Co., Inc.*, 701 A.2d 1213, 1219 (Md. Ct. Spec. App. 1997). A contractual choice of law provision may be defeated, however, if "the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice" or "application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which . . . would be the state of the applicable law in the absence of an effective choice of law by the parties." *Id.* (internal quotations omitted).

The parties expressly provided that Maryland law would govern the franchise agreement. Maryland has a substantial relationship to the parties; Choice Hotels is headquartered there, and the parties agreed to conduct arbitration there. Moreover, application of Maryland contract law to this arbitration agreement would not be contrary to any fundamental policy of Virginia. Although Chewl contends that Virginia has a strong policy favoring franchisees, that particular interest does not counsel application of Virginia contract law to determine whether an agreement to arbitrate is valid and enforceable. Accord-

ingly, Maryland contract law should determine the enforceability of the arbitration agreement.

Chewl contends that the arbitration provision is an unenforceable contract of adhesion. Under Maryland law, a contract of adhesion is one that is "drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it basis to the weaker party who has no real opportunity to bargain about its terms." *Meyer v. State Farm Fire & Cas. Co.*, 582 A.2d 275, 278 (Md. Ct. Spec. App. 1990). The district court made the following factual findings:

> [Chewl] is not an unsophisticated consumer, nor was the contract a consumer transaction. The contract is a commercial contract and [Chewl] is an experienced hotel franchise owner, having purchased at least one other franchise in the past. Moreover, [Chewl] has not demonstrated that it had no viable alternatives, or that it faced the possibility of being excluded from the hotel franchise business if it had refused such an arbitration contract. Rather, the facts of this case suggest that [Chewl] made a conscious decision to contract with Choice Hotels and change its affiliation, because it believed that the Quality Inn mark, as opposed to the Holiday Inn mark, would increase profitability. Further, addendums to the Agreement make clear that at least some negotiations took place before the Agreement was finalized, and that [Chewl] willingly accepted the burdens of the franchise agreement.

Chewl cannot demonstrate that these findings are clearly erroneous, and they plainly support the conclusion that the arbitration provision was not a contract of adhesion or otherwise unconscionable. Thus, the district court correctly concluded that the arbitration provision contained in the franchise agreement was valid and enforceable against Chewl. *Cf. BSR Tropicana*, 252 F.3d at 710-12 (requiring arbitration of certain claims under a nearly identical arbitration provision).[2]

---

[2]Chewl's reliance upon *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931 (9th Cir. 2001), is misplaced. The Ninth Circuit held in *Ticknor* that an arbitration provision similar to the one at issue here was a contract of

2.

The district court also properly concluded that the claims asserted by Choice Hotels fell within the scope of the arbitration provision. "[I]n applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the [FAA], due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Info. Sci., Inc. v. Board of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 475-76 (1989).

The arbitration provision covers "any controversy or claim arising out of or relating to" the franchise agreement, except indemnification claims, collection actions, and actions to enjoin Chewl from infringing Choice Hotels' trademarks. In its arbitration demand, Choice Hotels sought liquidated damages for termination of the franchise, damages for trademark infringement, interest, and attorneys' fees. These claims plainly relate to the franchise agreement. There is no indemnification claim (since there is no third party involved), nor did Choice Hotels seek an injunction. To the extent that Chewl argues for application of the collection-action exclusion, that argument is foreclosed by our decision in *BSR Tropicana*, where we held that a Choice Hotels arbitration provision similar to the one at issue here did not exclude a breach of contract claim. 252 F.3d at 711-12. As in *BSR Tropicana*, the franchisee's liability on the breach of contract claim did not "arise from the formation of the contract itself, but rather from an alleged breach of contract." *Id.* at 712. Thus, this contract claim is not a collection action. The district court correctly determined that Choice Hotels' claims fell within the scope of the arbitration agreement.

B.

An arbitration award may be set aside pursuant to the FAA only where (1) "the award was procured by corruption, fraud or undue

adhesion under *Montana* law. *Id.* at 939-41. Of course, Montana law is not applicable in this case, and Chewl has not demonstrated that the district court's factual findings concerning the parties' relative bargaining positions were clearly erroneous. On the facts and on the law, *Ticknor* is distinguishable.

influence," (2) "there was evident partiality or corruption in the arbitrators," (3) "the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy," or (4) "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a). In addition, we have recognized that an arbitration award may be set aside if it reflects a manifest disregard of applicable law. *Gallus Inv., L.P. v. Pudgie's Famous Chicken, Ltd.*, 134 F.3d 231, 233-34 (4th Cir. 1998).

1.

Chewl argues that the arbitrator exhibited "evident partiality" in favor of Choice Hotels. As the district court noted, "[b]esides the empty assertion, [Chewl] offers no evidence of bias." To the contrary, the arbitrator rendered a decision based upon two days of hearings and direct evidence of Chewl's infringement of the Choice Hotels trademark. The arbitrator awarded Choice Hotels less than it sought in liquidated damages, and he elected not to treble the trademark infringement damages as the Lanham Act permitted. There is no indication at all that the arbitrator failed to discharge his duties in a fair and impartial manner.

2.

Chewl further contends that the arbitrator improperly disregarded applicable law concerning liquidated damages. Under applicable Maryland law, a liquidated damages clause is enforceable if it is a reasonable estimate of just compensation at the time the agreement was made. *Massachusetts Indem. & Life Ins. Co. v. Dresser*, 306 A.2d 213, 216 (Md. 1973). Only if the amount agreed upon is "grossly excessive and out of all proportion to the damages that might reasonably have been expected to result from [a] breach of the contract" should a particular liquidated damages provision be defeated. *Baltimore Bridge Co. v. United Rys. & Elec. Co.*, 93 A. 420, 422 (Md. 1915). The fact that actual damages turn out to be less than those stipulated in the liquidated damages provision does not "characterize or stamp the stipulation as a penalty unless it was so exorbitant as to clearly show that such amount was not arrived at in a bona fide effort

. . . to estimate the damages that might have been reasonably expected to result from a breach" of the contract. *Id.* at 422-23.

Chewl has failed to demonstrate that the liquidated damages provision in the franchise agreement was a penalty. Precise damages could not be determined at the time of contracting, there being no measure of the royalties that would accrue to Choice Hotels by the success of Chewl's hotel. Moreover, the liquidated damages clause provided a reasonable method for calculating just compensation, taking into account the profits earned in the months prior to termination and the amount of time remaining before Chewl would be able to terminate the franchise on its own. Accordingly, the arbitrator properly awarded Choice Hotels liquidated damages according to the terms of the franchise agreement.

3.

Chewl next contends that the arbitrator improperly awarded Choice Hotels both liquidated damages and damages for trademark infringement. This argument is meritless. As the district court noted, the franchise agreement called for liquidated damages to remedy a termination occasioned by Chewl's default. Choice Hotels' trademark infringement claim arose from Chewl's conduct *after* termination of the agreement: Chewl continued to use the Quality mark even after its franchise had been extinguished. This was an independent claim that was separately compensable.

III.

Choice Hotels' claims were properly decided in arbitration, and Chewl has failed to demonstrate any grounds sufficient to vacate the arbitrator's award under § 10 of the FAA. Accordingly, the judgment of the district court is

*AFFIRMED.*