Dorice LONG, Appellant,

v.

**HOLLAND AMERICA LINE WEST- OURS, INC., a Washington Corporation, Appellee.**

No. S–8726.

Supreme Court of Alaska.

July 13, 2001.

Thomas L. Melaney, Anchorage, for Appellant.

Robert P. Blasco, Robertson, Monagle & Eastaugh, Juneau, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, BRYNER, and CARPENETI, Justices.

## OPINION

BRYNER, Justice.

## I. INTRODUCTION

Dorice Long sued for personal injuries she sustained during a Holland America tour in Alaska. She filed the suit well within the time limits of Alaska's tort statute of limitations but beyond the limit specified by a clause in her tour contract. Honoring the contract's choice of Washington law, the superior court upheld the limitations clause and dismissed Long's suit as untimely. We reverse. Because this case raises fundamental policy issues that are materially more interesting to Alaska than Washington, Alaska law applies. Under our law, the limitations clause was unenforceable without a showing of prejudice.

## II. FACTS AND PROCEEDINGS

In the spring of 1994 Dorice Long, a Florida resident, booked a tour of Alaska with Holland America Line Westours, Inc., (Holland America) through a Florida travel agent. The tour, scheduled to begin on June 1, 1994, included eleven days of land touring before Long was to board a Holland America vessel for a cruise down the Inside Passage in Southeast Alaska. Long received her tickets and other tour information a few days before her scheduled departure. The packet of information included the tour contract. The tour contract contained a choice of law provision stating that, except when maritime law applied, the contract would be construed according to Washington state law.

While touring in Kotzebue on June 10, Long fell and sustained serious injuries outside a museum operated by NANA Regional Corporation, Inc. Long was transported to Anchorage for treatment of her injuries.

Long's attorney notified Holland America in writing of a possible claim by Long against Holland America ten and one-half months after her injury. Sixteen months after her injury, Long filed a complaint against Holland America and NANA Regional Corporation, Inc., alleging negligence on the part of both defendants.

Holland America moved for summary judgment, arguing that the terms of the tour contract barred Long's claims. It noted that the tour contract set a specific limitations period, barring all claims for personal injury unless the claimant provided notice to Holland America within six months of the alleged injury and filed suit within one year after the trip was completed. Because Long had not complied with these terms, Holland America requested that the court dismiss Long's claims.

The superior court agreed with Holland America and granted summary judgment, dismissing all of Long's claims against Holland America.[1] Long appeals.

## III. DISCUSSION

### A. Standard of Review

■ This court reviews appeals from summary judgment de novo.[2] Summary judgment will be affirmed if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.[3] Here, Long does not dispute any material facts, but challenges the superior court's ruling as a matter of law.

### B. The Contractual Limitations Provision Is Not Enforceable.

Long asserts that the trial court erred when it held that the contract's limitations

---

1. The court also granted Holland America's motion to enter final judgment under Alaska Civil Rules 54(b) and 58.

2. See Christensen v. NCH Corp., 956 P.2d 468, 474 (Alaska 1998).

3. See id.; Alaska R.Civ.P. 56(c).

provision is governed by Washington law and is enforceable in Alaska. Long argues that Alaska's interest in having uniform statute of limitation periods is greater than Washington's interest in enforcing contractual provisions in Alaska and that the limitation provision of the contract is unenforceable under Alaska law. Holland America responds that the choice-of-law provision in the contract is enforceable and that Washington law would uphold the limitations provision. We agree with Long's conclusion.

### 1. *Alaska law is applicable.*

The first issue is whether the trial court correctly applied Washington law, as specified by the contract's choice-of-law provision. When deciding choice of law issues, we have in the past turned to the Restatement (Second) of Conflict of Laws (Restatement) for guidance.[4] Where, as here, the parties' contract includes a choice-of-law provision, Restatement § 187 applies. Section 187 provides, in relevant part:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.[5]

The point in dispute here concerns the validity of the contractual limitations provision. Since parties cannot determine contractual validity by explicit agreement,[6] the superior court was correct in determining that subsection (1) does not apply; neither party contests this decision.

■ Similarly, subsection (2)(a) does not affect the analysis here. The superior court correctly concluded that Holland America had a substantial relationship with the state of Washington because it was headquartered there and that was the location from which the contract was issued.[7] Long does not dispute this.

■ Therefore, under Restatement § 187(2)(b) we should apply Alaska law only if three conditions are met: (1) Alaska's law would apply under Restatement § 188 in the absence of an effective choice of law; (2) Alaska has a materially greater interest in the issue; and (3) the application of Washington law would offend a fundamental policy of Alaska. Here, all three conditions are met.

The first condition is that Alaska's law would apply in the absence of an effective choice of law. It would. Under Restatement § 188, and in the absence of an effective choice of law by the parties, we must apply the principles of Restatement § 6 to

---

4. *See, e.g., Palmer G. Lewis, Co. v. ARCO Chem. Co.*, 904 P.2d 1221, 1227 & n. 14 (Alaska 1995) (applying Restatement § 188 to determine applicable law where parties' contract did not contain choice-of-law provision); *Ehredt v. DeHavilland Aircraft Co. of Canada*, 705 P.2d 446, 453 (Alaska 1985) (applying Restatement to determine which law governs measure of damages in wrongful death suit when representative of deceased resided out of state).

5. Restatement (Second) of Conflict of Laws § 187 (1971).

6. *See id.* cmt. d (stating that parties cannot resolve questions involving capacity, formalities, and substantial validity by agreement); *cf. General Ins. Co. of Am. v. Interstate Serv. Co.*, 118 Md.App. 126, 701 A.2d 1213, 1219 (1997) (analyzing validity of contractual limitations provision under Restatement § 187(2)).

7. *See* Restatement § 187 cmt. f (reasonable basis for a choice of law exists "where one of the parties is domiciled or has his principal place of business" in chosen state).

determine which state has the most significant relationship.[8] In doing so, we must consider the relevant policies of Alaska and Washington, giving special deliberation to the following:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance, [and]

. . . .

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.[9]

The place of performance has "so close a relationship to the transaction and the parties that it will often be the state of the applicable laws";[10] in this case, the place of performance is Alaska. The place of negotiation has little impact where, as here, the parties conduct negotiations from separate states by mail and telephone.[11] Similarly, the place of contract has little impact on the events at hand. Subsection (e), however, carries greater weight than either subsection (a) or (b). Nonetheless, we feel that the parties' domicile, residence, place of incorporation, or place of business, as listed in subsection (e), deserves less consideration than the place of contract performance.[12]

Because statutes of limitations are procedural, Alaska law, as law of the forum, governs in the absence of an effective choice of law.[13] Additionally, there is a presumption that the "law of the state where the [personal] injury occurred" governs in the absence of an effective choice of law.[14]

The second requirement is that Alaska have a materially greater interest in the issue than Washington. Alaska has three interests that are materially greater than Washington's: (1) establishing uniform filing deadlines; (2) ensuring that fair compensation is available for personal injuries occurring in Alaska; and (3) deterring negligent future conduct in the state.

Alaska has an undeniably strong interest in establishing uniform filing deadlines.[15] Uniform deadlines promote predictability for plaintiffs, defendants, and other interested parties alike.[16] Equally strong is Alaska's interest in providing victims of negligence who sustain personal injuries within the state access to a legal system that affords them a fair opportunity to seek redress from the negligent party.[17] So too is Alaska's interest in promoting public safety by deterring future negligent conduct within the state.[18] In

---

8. *See* Restatement § 188(2). Restatement § 6(2) provides that when there is no statutory directive, the factors to be considered in determining choice of law include:

   (a) the needs of the interstate and international systems,

   (b) the relevant policies of the forum,

   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

   (d) the protection of justified expectations,

   (e) the basic policies underlying the particular field of law,

   (f) certainty, predictability and uniformity of result, and

   (g) ease in the determination and application of the law to be applied.

9. *Id.* at § 188(2) & cmt. e.

10. *Id.* at § 188 cmt. e.

11. *See id.*

12. *See infra* note 19 and accompanying text.

13. *See Marine Constr. & Design Co. v. Vessel Tim,* 434 P.2d 683, 686 (Alaska 1967).

14. Restatement § 146.

15. *See Nolan v. Sea Airmotive, Inc.,* 627 P.2d 1035, 1045 (Alaska 1981) ("Setting appropriate statutes of limitation is indeed a function within the legislature's purview, as such statutes represent judgments on questions of public policy."); *see also Industrial Indem. Ins. Co. v. United States,* 757 F.2d 982, 986, 988 (9th Cir.1985).

16. *See Marks v. State,* 496 P.2d 66, 68 n. 4 (Alaska 1972) (commenting that uniform statutes of limitations provide predictability in legal proceedings).

17. *Cf. Kooly v. State,* 958 P.2d 1106, 1108 (Alaska 1998). As the Alaska Legislature recently stated, it is the public policy of Alaska to protect "Alaskans' rights to reasonable, but not excessive, compensation for tortious injuries caused by others." *See also* ch. 26, § 1, SLA 1997.

18. As a New Jersey court recently explained:

   The policy of deterrence is based on the thesis that exacting compensation from a wrongdoer will deter his or her future misconduct, and is ordinarily associated with the sovereignty in which the past misconduct took place and in

contrast, the State of Washington's only interest in the issue at hand is in protecting resident corporations' contract rights relating to torts that they commit in other states. While this interest is certainly not insubstantial, we find it decidedly weaker than Alaska's interests. We hold, then, that Alaska's interests are materially greater than Washington's.[19]

The choice of law in this case thus turns on whether the third condition of Restatement § 187(2)(b) is met—whether enforcing Washington law would offend a fundamental policy of the State of Alaska. In our view, enforcing Washington law would offend the fundamental policies underlying the three Alaska interests that we have just identified as being materially greater than Washington's interest in the issue at hand—enforcing uniform standards for commencing litigation in Alaska's courts, ensuring Alaska personal injury victims reasonable access to the Alaska legal system, and promoting public safety.

■ Uniform application of our statutes of limitations involves fundamental policy concerns.[20] Statutes of limitations serve dual policies: to protect against prejudice from stale claims[21] and to ensure an adequate opportunity for filing a claim prior to the statutory bar.[22] For cases involving personal injury, the legislature struck a balance between these competing policies by adopting a two-year statute of limitations.[23] Since contract provisions altering this statutory period necessarily run the risk of unbalancing the legislature's carefully measured policy choice, upholding such provisions through an uncritical application of another state's contract law would violate public policy.[24]

In analogous settings, we have recognized the need to preserve the policy balance of our time bar statutes against unlimited contractual revision. For example, in *Johnson v. City of Fairbanks* we invalidated a municipal ordinance that established a four month notice-of-claim requirement for tort suits, holding that it violated the "statewide legislative policy" of providing uniform limitation periods.[25] And in *Alaska Energy Authority v. Fairmont Insurance Co.,* we held that a filing limit imposed in an insurance policy was unenforceable absent an affirmative showing of prejudice to the insurer.[26] The reasoning of these cases encompasses the present circumstances.[27]

Different, but similarly fundamental, policies underlie Alaska's laws governing compensation for personal injury. Our tort system serves multiple purposes. It strives to ensure fair compensation for victims of negligently inflicted harm.[28] It seeks to treat all

which future misconduct may occur. The state in which the accident occurred has an interest in maintaining safety and deterring such conduct.
*Erny v. Russo,* 333 N.J.Super. 88, 754 A.2d 606, 612 (2000) (citation omitted); *cf. Sturm, Ruger & Co. v. Day,* 594 P.2d 38, 47 (Alaska 1979) (noting that punitive damages available in products liability serve deterrence function) *modified,* 615 P.2d 621 (Alaska 1980), *overruled, Dura Corp. v. Harned,* 703 P.2d 396 (Alaska 1985).

19. *See Industrial Indem. Ins. Co.,* 757 F.2d at 987.

20. *See Nolan,* 627 P.2d at 1045.

21. *See West v. Buchanan,* 981 P.2d 1065, 1068 (Alaska 1999) (citing *Pedersen v. Zielski,* 822 P.2d 903, 907 (Alaska 1991)).

22. *See Johnson v. City of Fairbanks,* 583 P.2d 181, 186–87 (Alaska 1978).

23. *See* AS 09.10.070.

24. We have stated: "We look upon the defense of statute of limitations with disfavor and will strain

neither the law nor the facts in its aid." *Fred Meyer of Alaska, Inc. v. Adams,* 963 P.2d 1025, 1027 n. 6 (Alaska 1998) (citing *Tipton v. ARCO Alaska, Inc.,* 922 P.2d 910, 912–13 (Alaska 1996) and *Lee Houston & Assocs., Ltd. v. Racine,* 806 P.2d 848, 854–55 (Alaska 1991)).

25. 583 P.2d at 187.

26. 845 P.2d 420, 423 (Alaska 1993).

27. And notably, at least one other court applying Restatement § 187(b)(2) has specifically ruled that a forum state's interest in enforcing uniform filing deadlines overrides a contractual choice-of-law clause that would apply another state's shorter deadlines. *See Industrial Indem. Ins. Co.,* 757 F.2d at 987–88.

28. In *Kooly v. State,* we observed that the objective of our negligence law is to provide "a means whereby a person may recover for losses caused by a danger which another's unreasonable behavior created." 958 P.2d 1106, 1108 (Alaska 1998) (quoting *Schumacher v. City & Borough of Yakutat,* 946 P.2d 1255, 1257 (Alaska 1997) (footnotes omitted)).

responsible parties fairly by allocating damages in proportion to each party's fault.[29] And more generally, it promotes the safety and welfare of all Alaskans by deterring negligent conduct and minimizing social costs of negligence such as unpaid medical expenses, lost wages, and diminished productivity.[30] Hence, a contractual provision that alters the effect of the tort statute of limitations between contracting parties presents a matter of fundamental concern. Moreover, such a provision may have significant and far-reaching impacts beyond its effect on the rights and interests of contracting parties. To the extent that Washington contract law would routinely allow contracting parties to alter their own rights and interests and the rights and interests of non-contracting parties in matters concerning compensation for personal injuries that occur in Alaska, enforcing that law would subvert the basic purpose of Alaska's system of negligence laws.[31]

For example, in adopting a comprehensive regime of comparative negligence as part of Alaska's 1997 tort reform legislation, the Alaska Legislature explained that

it is the intent of this legislature as a matter of public policy to

. . . .

(9) ensure that in actions involving the fault of more than one person, the fault of each claimant, defendant, . . . or other person responsible for the damages and available as a litigant be determined and awards be allocated in accordance with the fault of each.[32]

As this statement exemplifies, Alaska's standard of pure comparative negligence embodies a fundamental public policy choice made by the legislature.[33] A rule that mechanistically upheld all contract provisions shortening the tort statute of limitations would offend this policy by subjecting various claims arising from the same negligent act, and various involved parties, to differing time limits.

For these reasons, we conclude that contractual provisions like the one at issue here involve matters of fundamental policy that demand scrutiny under Alaska law.

### 2. The contractual limitations period is not enforceable in Alaska.

■ The next issue, then, is whether the tour contract's contractual limitations clause is enforceable under Alaska law. In our view, public policy bars enforcement of the clause at issue here because Holland America has failed to allege or show that enforcement of the clause is necessary to avoid prejudice.

As already mentioned, this court has addressed clauses setting time limits on the commencement of suit in the context of insurance policies. In those cases, we noted that the purpose of such clauses is "to avoid prejudice, specifically, to avoid the extra danger of fraud and mistake associated with stale claims." [34] But we also observed that it would be inequitable to enforce these clauses unless prejudice could be demonstrated.[35] Because the relative bargaining powers of the contracting parties disproportionately favored the insurers, we reasoned that contractual limitations clauses should only be enforced to "advance[ ] the purpose for which they were included in the policy." [36]

In our view, the rationale that we adopted in these insurance cases applies with equal force in the present contractual setting. It is undisputed that Holland America possessed

---

**29.** See infra notes 32 & 33 and accompanying text.

**30.** See supra notes 17 & 18 and accompanying text.

**31.** Compare, e.g., AS 45.45.900 (providing that indemnification clauses concerning construction contracts which protect the promisee from liability for damage caused by the promisee's negligence are against Alaska's public policy).

**32.** Ch. 26, § 1, SLA 1997.

**33.** See AS 09.17.080; Alaska Gen. Alarm, Inc. v. Grinnell, 1 P.3d 98, 104–05 (Alaska 2000).

**34.** Estes v. Alaska Ins. Guar. Ass'n, 774 P.2d 1315, 1318 (Alaska 1989) (citing Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc., 514 P.2d 223, 226 (Alaska 1973)).

**35.** See Alaska Energy Auth. v. Fairmont Ins. Co., 845 P.2d 420, 422 (Alaska 1993); Estes, 774 P.2d at 1318.

**36.** Estes, 774 P.2d at 1318.

disproportionate bargaining power in setting the terms of the tour contract.[37] Long could not have negotiated for different terms. Furthermore, the purpose of the shortened limitation clause is identical to the purpose of the clauses at issue in our insurance cases—to avoid the prejudice of stale claims.

Here, Holland America neither showed nor alleged any prejudice. In fact, Holland America had immediate notice of Long's injury. Long's attorney gave the company formal notice of her claim within eleven months of the injury and filed suit well before the usual two-year statute of limitations expired. Given the lack of prejudice, enforcement of the truncated limitations period would amount to little more than a windfall for Holland America.

Moreover, the record establishes that Holland America imposed the disputed clause in an unusually one-sided manner. Even under industry-friendly standards that federal courts have developed for tour contract cases falling within their jurisdiction, contract provisions dictating choice of law or shortening deadlines for filing will not be enforced unless the tour company makes a reasonable effort to warn passengers of the restrictions.[38] This "reasonable communicativeness" test entails a two-pronged analysis that delves, first, into the facial clarity of the ticket contract and, second, into the circumstances surrounding the individual passenger's possession and familiarity with the ticket.[39]

Under this test, the court determines enforceability on a case-by-case basis: "Differing circumstances may render the same ticket binding on one passenger in one case, yet invalid as against another passenger in another case."[40] Hence, a case is always subject to circumstantial scrutiny for signs of unfairness, overreaching, or fraud.[41]

Looking beyond the face of the tour vouchers in the present case, there are indications of contractual overreaching by Holland America.[42] The record establishes that Holland America and its agents made no effort to inform Long of the contractual limitation until the company sent Long her tour vouchers. She received the vouchers just days before she was scheduled to embark on her journey, and after she had already paid for the tour. Yet the terms of Long's tour contract—conspicuously printed in the vouchers—expressly stated that it was too late for her to cancel the tour and ask for a full refund, *"regardless of the reason for cancellation."*[43] Thus, if Long found the newly announced contractual language unacceptable, she could reasonably have believed that she had no recourse-that the contract left her no realistic choice but to travel on Holland

---

**37.** Holland America disputes that the tour contract was an "adhesion contract," but not that it dictated the terms of the contract and possessed disproportionate bargaining power.

**38.** *See Lousararian v. Royal Caribbean Corp.,* 951 F.2d 7, 8 (1st Cir.1991).

**39.** *See id.* at 8–9.

**40.** *Id.* at 9 (quoting *Shankles v. Costa Armatori, S.P.A.,* 722 F.2d 861, 863–64 (1st Cir.1983)).

**41.** *See Dempsey v. Norwegian Cruise Line,* 972 F.2d 998, 999 (9th Cir.1992); *cf. Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) ("It bears emphasis that forum-selection clauses contained in form passage contracts are subject to judicial scrutiny for fundamental fairness.").

**42.** Because the trial court decided this case on summary judgment, we construe the record in the light most favorable to Long.

**43.** The tour vouchers provided, in relevant part:

> **Cancellations Policy:** Holland America's Cancellations Policy for the cruise or tour you have selected is specified in the applicable Holland America brochure. In most cases, this policy permits a full refund of amounts received by Holland America ... if written cancellation is received by Holland America at least 76 days prior to the date on which you are to commence travel.... Note that certain voyages require that written cancellation be received more than 76 days prior to travel commencement. Partial refunds may be available for later cancellations. No refunds are made in the case of cancellations received less than a certain number of days prior to travel commencement. The applicable brochure specifies the exact cancellation deadlines and refund amounts. Cancellation fees apply *regardless of the reason for cancellation,* including medical and family matters.

(Emphasis added.)

America's unilaterally dictated, last-minute terms.[44]

Addressing an almost identical situation presented to the United States Supreme Court in *Carnival Cruise Lines v. Shute,* Justice Stevens persuasively reasoned that a tour company's last-minute disclosure of a choice-of-forum clause rendered the clause fundamentally unfair:

> Of course, many passengers, like the respondents in this case, . . . will not have an opportunity to read paragraph 8 [the disputed clause] until they have actually purchased their tickets. By this point, the passengers will already have accepted the condition set forth in paragraph 16(a), which provides that "[t]he Carrier shall not be liable to make any refund to passengers in respect of . . . tickets wholly or partly not used by a passenger." Not knowing whether or not that provision is legally enforceable, I assume that the average passenger would accept the risk of having to file suit in Florida in the event of an injury, rather than canceling-without a re-fund-a planned vacation at the last minute. The fact that the cruise line can reduce its litigation costs, and therefore its liability insurance premiums, by forcing this choice on its passengers does not, in my opinion,

suffice to render the provision reasonable.[45]

Given that Holland America confronted Long with a similar last-minute disclosure—a fact that Holland America attempts to side-step but has never denied—the record establishes that the company breached its duty to treat Long fairly, thereby vitiating the tour contract's filing deadline.

## IV. CONCLUSION

Because the record fails to establish prejudice to Holland America, we hold that it was error to grant summary judgment by enforcing the contractual limitations clause.[46] We therefore REVERSE the superior court's judgment dismissing Long's complaint against Holland America.

EASTAUGH, Justice, with whom FABE, Justice, joins, dissenting.

### A. Introduction

Restatement (Second) of Conflict of Laws § 187(2)(b) (1971), correctly applied, requires us to apply Washington law in deciding whether the one-year claims time limit specified in the parties' written tour contract is enforceable.[1] Because the time limit is en-

---

**44.** We do not suggest that this is the only possible interpretation of the tour contract's refund provisions. A notice printed on the first page of the contract stated:

> If any term or condition of this contract . . . is unacceptable to you, this contract . . . will be cancelled and the "refund amount" paid to you (without deducting cancellation fees) but only if this contract is surrendered to HALW for cancellation within 10 days after receipt of this contract by you or your travel agent (whichever occurs first), but in any event prior to commencing your cruise or cruisetour.

In contrast to the contract's Cancellations Policy, this notice seems to provide for a full refund under certain circumstances. And the notice's language could arguably be construed to override the Cancellations Policy's potentially conflicting provisions. But the possibility of interpreting the contract in a way that would harmonize this internal tension is irrelevant for present purposes. The important point here is that a traveler in Long's position—one who receives the contract at the last minute and has no clear indication of how these potentially conflicting provisions would ultimately be reconciled—could reasonably conclude that a full refund might be denied, or at least that the risk

of denial was too great to make cancellation a realistic option.

**45.** 499 U.S. at 597–98, 111 S.Ct. 1522 (Stevens, J., dissenting). Notably, the majority opinion of the Court in *Carnival Cruise Lines* avoided this issue, electing instead to rely on the respondents' concession that they received sufficient notice of the forum selection clause before entering the contract for passage. *See id.* at 590, 111 S.Ct. 1522.

**46.** Because this case arises on summary judgment, our ruling is necessarily based on the evidentiary record that existed when the superior court entered its order. Our holding does not preclude the superior court, in its discretion, from allowing Holland America to present further evidence on the issue of prejudice.

**1.** As the court's opinion correctly notes, "under Restatement § 187(2)(b) we should apply Alaska law only if three conditions are met: (1) Alaska's law would apply under Restatement § 188 in the absence of an effective choice of law; (2) Alaska has a materially greater interest in the issue; and (3) the application of Washington law would offend a fundamental policy of Alaska." Op. at 432.

forceable under Washington law,[2] the law the parties chose, we should enforce it. Enforcing it would offend no fundamental policy of Alaska, and certainly not the sole purpose of Alaska's statutes of limitations: avoidance of stale claims. The one-year time limit was legally and factually reasonable. Alaska's interests do not outweigh either the interest of the contracting parties in having their permissible bargain enforced or the interest of Washington in having its law applied when its domiciliary corporations enter into written contracts choosing Washington law. The court's opinion identifies and relies on several Alaska policies and interests. To the extent they actually exist, those policies and interests would not be prejudiced by enforcing the contract. And because this is a tour contract, not an insurance policy, the claim time limit is enforceable as written, even under Alaska law, without requiring Holland America to show prejudice. I therefore respectfully dissent.

### B. How the Court's Opinion Resolves the Case

The core of my disagreement with the court's opinion lies in the Alaska policies and interests that it identifies and relies on to resolve the choice-of-law issue. It first identifies three Alaska interests: (1) enforcing uniform standards for commencing litigation in Alaska's courts; (2) ensuring Alaska personal injury victims reasonable access to the Alaska legal system; and (3) promoting public safety.[3] It reasons that these three interests are "materially greater" than Washington's, satisfying the second requirement of Restatement § 187(2)(b).[4] It then reasons that § 187(2)(b)'s third requirement is satisfied because enforcing Washington law "would offend the fundamental policies underlying" these same three interests.[5] It asserts that "[u]niform application of our statutes of limitations involves fundamental policy concerns."[6] It also asserts that statutes of limitations serve the "dual policies" of (1) protecting "against prejudice from stale claims"; and (2) ensuring "an adequate opportunity for filing a claim prior to the statutory bar."[7] Having already concluded that the first requirement of § 187(2)(b)—Alaska law would apply absent an effective choice—was met,[8] the opinion holds that the parties' choice of law is ineffective as to the issue of the enforceability of the time limit.

Applying Alaska law, the court's opinion then concludes that because Holland America had "disproportionate bargaining power," the time limit is not enforceable as written.[9] It further reasons that enforcement would be unfair because Holland America "overreached."[10] It nonetheless does not preclude Holland America from attempting on remand to enforce the filing deadline by showing that it was prejudiced by Long's delay in bringing suit.[11]

---

**2.** See Southcenter View Condominium Owners' Ass'n v. Condominium Builders, Inc., 47 Wash. App. 767, 736 P.2d 1075, 1076–78 (1986) (enforcing one-year contractual limitation provision against plaintiff's negligence and contract claims, and holding that contractual limitations provisions are enforceable if reasonable) (citing Wilhelmy v. Northwest Airlines, 86 F.Supp. 565, 567–68 (W.D.Wash.1949) (barring passenger's personal injury claims against airline because she failed to comply with ticket's requirements that she give written notice of claim within thirty days and commence suit within one year of occurrence of injury)); see also Yakima Asphalt Paving Co. v. Washington State Dep't of Transp., 45 Wash.App. 663, 726 P.2d 1021, 1023 (1986) ("Parties to a contract can agree to a shorter limitations period than that called for in a general statute.").

**3.** See Op. at 434.

**4.** Op. at 434.

**5.** Op. at 434.

**6.** Op. at 434. In support of this proposition, the court cites Nolan v. Sea Airmotive, Inc., 627 P.2d 1035, 1045 (Alaska 1981). See Op. at 434 n. 20. Nolan did not involve parties who agreed to reduce the deadline for filing actions. See Nolan, 627 P.2d at 1037–38.

**7.** Op. at 434 (citing West v. Buchanan, 981 P.2d 1065, 1068 (Alaska 1999) (citing Pedersen v. Zielski, 822 P.2d 903, 907 (Alaska 1991)), for the first proposition, and Johnson v. City of Fairbanks, 583 P.2d 181, 186–87 (Alaska 1978), for the second).

**8.** See Op. at 432–433.

**9.** Op. at 435–436.

**10.** Op. at 436–437.

### C. Why the Court's Opinion Reaches the Wrong Result

#### 1. Policies and interests

I think that the court's opinion foundationally errs in describing Alaska's interests and its "fundamental" policies.

##### a. Purpose of the statutes of limitations

These errors originate in misconceptions about the purpose of statutes of limitations. The court's opinion asserts that statutes of limitations, in addition to avoiding stale claims, serve a second "fundamental" policy: "ensur[ing] an adequate opportunity for filing a claim prior to the statutory bar." [12]

I disagree with that proposition because I think that the relevant statute of limitations has no purpose of ensuring an adequate time for filing suit. No doubt the legislature set statutory deadlines that it thought would give claimants an adequate opportunity to investigate possible claims and file suit. But a conclusion that two years is adequate is not the same as a conclusion that anything less is inadequate. Adopting a *maximum* time differs from guaranteeing a *minimum* time.

Statutes of limitations have the purpose of preventing stale claims. [13] This purpose serves public interests, [14] even though these deadlines inevitably benefit defendants at the expense of plaintiffs. This purpose does not guarantee an unalterable minimum time for suit. It does not explicitly or implicitly address the parties' ability to agree to a reduced period. And no other purposes recognized by us or commentators guarantee some minimum time for filing a personal injury lawsuit. [15]

In support of the "ensuring" proposition, the court's opinion cites *Johnson v. City of Fairbanks*, where we invalidated a city charter provision that imposed a 120 day notice-of-claim requirement as a precondition for tort suits against the city. [16] We reasoned that the notice requirement violated the "statewide legislative policy" of providing a uniform limitations periods for victims of tortious conduct. [17]

*Johnson* is unpersuasive authority for the proposition that parties violate public policy by entering into a written contract requiring suit within one year of injury. *Johnson* did not involve contracting parties. It concerned a city's authority to unilaterally impose requirements on persons asserting tort claims

---

11. *See* Op. at 437 n. 46.

12. Op. at 434.

13. *See West v. Buchanan*, 981 P.2d 1065, 1068 (Alaska 1999) ("*[T]he* purpose of statutes of limitations is to protect defendants from the injustices that may result from the prosecution of stale claims." (emphasis added)); *Pedersen*, 822 P.2d at 907 ("*The* purpose of statutes of limitations is to eliminate the injustice which may result from the litigation of stale claims." (emphasis added)); *Lee Houston & Assocs. v. Racine*, 806 P.2d 848, 855 (Alaska 1991) ("*[T]he primary purpose* of the statutes of limitations . . . [is] to encourage prompt prosecution of claims and thus avoid injustices which may result from lost evidence, faded memories and disappearing witnesses. . . . [A] shorter limitations period is consistent with the more evanescent nature of evidence which is frequently found in cases involving personal, reputational or dignity injuries." (emphasis added, citation omitted)); *Byrne v. Ogle*, 488 P.2d 716, 718 (Alaska 1971) ("It is generally recognized that the purpose of statutes of limitations is to encourage promptness in the prosecution of actions and thus avoid the injus-

tice which may result from the prosecution of stale claims." (citation omitted)); *see also* Note, *Developments in the Law: Statutes of Limitations*, 63 Harv.L.Rev. 1177, 1185 (1950) [hereinafter *Developments*] ("The primary consideration underlying [the statutes of limitations] is undoubtedly one of fairness to the defendant."). The "collateral purposes" that have been identified do not include setting a minimum time for suit. *See id.* at 1185–86.

14. *See Developments*, *supra* note 13, at 1185 ("Another factor may be an estimate of the effectiveness of the courts, and a desire to relieve them of the burden of adjudicating inconsequential or tenuous claims." (citation omitted)).

15. *See, e.g., Byrne*, 488 P.2d at 718; *Developments*, *supra* note 13, at 1183. But compare *Johnson v. City of Fairbanks*, 583 P.2d 181, 187 (Alaska 1978), which I discuss below in text.

16. 583 P.2d 181, 187 (Alaska 1978), *cited in* Op. at 434 n. 22.

17. *Id.*

against it.[18] Those requirements denied those claimants a remedy in the state courts unless the claimants first did things the state did not require them to do to commence suit.[19] Requiring claimants to give the city a written pre-suit notice of claim was itself alien to the state's scheme for beginning litigation. And the notice deadline, 120 days, was unreasonably short by any standard.

*Johnson* establishes that the state's political subdivisions cannot unilaterally alter the legislative and judicial norms and rules which govern interactions between themselves and individuals to whom they owe a duty of care. I do not read it as holding that the statutes of limitations set a minimum time for filing suit that cannot be reduced by agreement. And such a holding would represent a marked departure from what commentators say and what this court has said about the purpose of the statutes of limitations.[20]

Establishing the existence of a "fundamental policy" requires much more. The commentary to Restatement § 187 states that "a fundamental policy may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power."[21] The Maryland statute at issue in *General Insurance Co. of America v. Interstate Service Co.*[22] provides an example. It expressly stated that contractual time limitations provisions in insurance contracts were "'against State public policy, illegal and void....'"[23] But our statutes contain no comparable general prohibition, and AS 09.10.070 does not pro-hibit parties from contracting for a shorter limitations period. *Johnson* is far too tangential to be a basis for divining a "fundamental" Alaska policy that would have the effect of reading the statutes of limitations as guaranteeing a minimum time for suit.

Moreover, our general legal principles do not support a conclusion that Alaska policy would be offended by enforcing a contractual limitations provision. We have approvingly quoted Professor Corbin's observation that "it is not against the public interest [for parties to] agree upon a shorter time limit than that fixed by statute if the time agreed upon is not so short as to be unreasonable."[24] We quoted Professor Corbin at length on this topic:

> Although the parties can not at the time of contracting effectively bargain not to plead the statute or that the time for suit shall be longer than that allowed by statute, it is not against the public interest that they shall then agree upon a shorter time limit than that fixed by statute if the time agreed upon is not so short as to be unreasonable in the light of the provisions of the contract and the circumstances of its performance and enforcement. Such time limits in insurance policies have often been held valid. These agreements are not at all inconsistent with the purposes underlying the statute of limitations. Those purposes are to prevent the bringing and enforcement of stale claims, involving extra danger of fraud and mistake, unless the debtor has expressed a voluntary assent within the statutory period. An express

---

18. *See id.* at 182 & n. 3.

19. *See id.*

20. *See supra* note 13.

21. Restatement (Second) of Conflict of Laws § 187 cmt. g (1971).

22. 118 Md.App. 126, 701 A.2d 1213 (1997).

23. *Id.* at 1219 (quoting Md. Ann.Code art. 48A, § 377B (1994) (recodified at Md.Code Ann., Ins. § 12–104 (2000))); *see also Dunlop Tire & Rubber Corp. v. Ryan*, 171 Neb. 820, 108 N.W.2d 84, 88 (1961) (stating that contractual limitations periods in insurance contracts are void because Nebraska state statute expressly forbids such provisions when they vary from general statute of limitations). Similarly distinguishable is *Industrial Indemnity Insurance Co. v. United States*, 757 F.2d 982, 986 (9th Cir.1985) (applying Idaho Code § 29–110 (1980), which declares "void" any contract condition "which limits the time within which [a party] may thus enforce his rights"), on which the court's opinion relies for a variety of propositions. *See* Op. at 433 n. 15, 434 n. 19, & 434 n. 27.

24. *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 226 (Alaska 1973) (quoting 1A Arthur Linton Corbin, *Contracts* § 218, at 311–12 (1963)). The revised version of *Corbin on Contracts* contains an almost identical statement. *See* 3 Eric M. Holmes, *Corbin on Contracts* § 9.9, at 278 (1996).

provision fixing a shorter limit merely hastens the enforcement; and it is not made invalid by being included from the beginning in the contract to be enforced. If held invalid, it must be on the ground that the terms are unconscionable and that unfair advantage has been taken of a claimant whose bargaining position was inferior.[25]

This passage is important for at least two reasons. First, it discusses the avoidance-of-stale-claims purpose and says nothing of any possible fundamental legislative policy of setting a minimum time for suit. Because the dispute in *Fireman's Fund* concerned an insurer's attempt to reduce the claim period by contract,[26] one would expect that we would have recognized the existence of a fundamental policy ensuring a minimum time for suit in that case if we had thought that such a policy existed.

Second, this passage recognizes that *enlarging*, but not *reducing*, the statutory period may offend the only recognized statutory purpose.[27]

To support the existence of the fundamental policy it perceives, the court's opinion also relies on an alleged legislative policy choice.[28] The court reasons that contract terms altering the statutory period "necessarily run the risk of unbalancing the legislature's carefully

measured policy choice," and asserts that upholding such terms "through an uncritical application of another state's contract law would violate public policy."[29] This perception of a "carefully measured policy choice" seems to rest on the opinion's erroneous assumption, discussed above, that Alaska's statutes of limitations set minimum times for bringing suit.

Further, the balance the legislature actually struck bears little resemblance to the balance the court's opinion perceives. Our statutes contain several provisions which can enlarge the time for suit by delaying the running of an applicable limitations period for specific reasons.[30] None of those reasons applies here. It is significant that the legislature has not prohibited parties from contracting to reduce the applicable statutory limitations period.[31] If the legislature had believed that contractual terms would pose a threat to the balance it struck, one would assume that it would have prohibited any contracted-for reduction.

Nor do our cases evidence a carefully balanced legislative scheme that forbids such a deviation. So far as I know, this court has not previously mentioned a notion that the statutes of limitations reflect a balanced legislative scheme that sets both maximum and minimum times for suit. And in addressing

25. *Fireman's Fund,* 514 P.2d at 226 (quoting 1A Corbin, *supra* note 24, § 218, at 311–12 (emphasis deleted)).

26. *Fireman's Fund,* 514 P.2d at 224.

27. *See Developments, supra* note 13, at 1181 ("In the absence of controlling legislation, the courts generally uphold agreements shortening the period for bringing suit, for of course there is no conflict with the general policy favoring prompt settlement.").

28. *See* Op. at 434–435.

29. Op. at 434.

30. *See* AS 09.10.130 (tolling statutes of limitations when defendant is out of state or concealed in state until defendant returns or concealment ceases); AS 09.10.140 (tolling statutes of limitations for minority and incompetency).

31. *See, e.g., Margolies v. State Farm Fire & Cas. Co.,* 810 F.Supp. 637, 641 (E.D.Pa.1992) (holding

that Pennsylvania statute prohibiting insurer from substituting contractual provisions less favorable to insured embodies public policy sufficient to invalidate insurance contract provisions which purport to substitute one-year limitations period for claims which by statute have three-year limitations period); *Sun Ins. Office, Ltd. v. Clay,* 133 So.2d 735, 737–38 (Fla.1961) (holding that Florida statute declaring that any contractual stipulation fixing time for instituting suit under the contract at a period of time less than that prescribed by statute of limitations should be illegal and void was applicable to policy applied for in Illinois by Illinois resident, who moved to Florida where loss occurred); *St. Louis & S.F.R. Co. v. James,* 36 Okla. 196, 128 P. 279, 285 (1912) (holding that stipulation in shipment contract requiring suit to be brought thereon within six-months of accrual of cause of action violated Oklahoma statute providing "[e]very stipulation or condition in a contract, by which any party thereto is restricted from enforcing his rights under the contract by the usual legal proceedings in the ordinary tribunals, or which limits the time within which he may thus enforce his rights, is void"); *see also supra* note 23.

limitations issues, we have adopted various legal principles as part of Alaska's common law without bothering to discuss their potential for unbalancing any possible "carefully measured" legislative policy choices.[32]

Further, allowing contracting parties to agree to a shorter limitations period does not conflict with the purpose underlying statutes of limitations, encouraging promptness in the prosecution of actions to avoid the injustice which may result from the prosecution of stale claims.[33] "An express provision fixing a shorter limit merely hastens the enforcement."[34]

### b. *Uniform standards for commencing litigation*

The court's opinion also asserts that "Alaska has an undeniably strong interest in establishing uniform filing deadlines. Uniform deadlines promote predictability for plaintiffs, defendants, and other interested parties alike."[35]

I think that any Alaska policy favoring a uniform standard for commencing suit is not so "fundamental" that it overrides the parties' contractual choice. Common law[36] and statutory exceptions[37] abound in Alaska. Although these exceptions relax statutory limitations periods, they demonstrate that there is no "uniform" standard. Circumstances in each case can affect the time for beginning suit.[38] Shifting decisional law has also contributed to the uncertainty about what limitations period governs,[39] and about when the applicable statute begins to run.[40] No greater uncertainty arises when contracting parties agree to reduce the time for suit to a specific period.

But assuming Alaska actually has a "strong" interest in establishing uniform filing deadlines, it would be satisfied by consistently applying the statutory limitations periods to like classes of claims absent an agreement by the parties to be bound by a different limitations period.[41]

### c. *Predictability*

It is irrelevant that uniform deadlines may promote predictability. Predictability is a byproduct of statutory deadlines, not a purpose. Moreover, predictability does not

---

**32.** *See, e.g., Turner Constr. Co. v. Scales*, 752 P.2d 467, 470–72 (Alaska 1988) (holding that six-year statute of repose on suits against design professionals violated equal protection clause of state constitution); *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829–30 (Alaska 1982) (adopting discovery rule); *see also Hanebuth v. Bell Helicopter Int'l*, 694 P.2d 143, 148 (Alaska 1984) (Moore, J., dissenting) (stating that "[t]his court should not blithely interfere with the balance struck by the legislature" by applying discovery rule to statutory two-year limitations period for wrongful death actions).

**33.** *See Byrne v. Ogle*, 488 P.2d 716, 718 (Alaska 1971).

**34.** *Fireman's Fund*, 514 P.2d at 226.

**35.** Op. at 433 (citations omitted).

**36.** *See, e.g., Law Offices of Steven D. Smith, P.C. v. Borg–Warner Sec. Corp.*, 993 P.2d 436, 444 (Alaska 1999) (estoppel); *Abbott v. State*, 979 P.2d 994, 999 (Alaska 1999) (equitable tolling); *Greater Area Inc. v. Bookman*, 657 P.2d 828, 829–30 (Alaska 1982) (discovery rule).

**37.** *See, e.g., supra* note 30.

**38.** *See Pedersen v. Zielski*, 822 P.2d 903, 907 (Alaska 1991) ("Application of the discovery rule, however, is dependent on facts that are often unclear.").

**39.** *See, e.g., Van Horn Lodge, Inc. v. White*, 627 P.2d 641, 643 (Alaska 1981) (holding that in absence of express promise by attorney to client, two-year statute of limitations applied to malpractice claim), *overruled by Lee Houston & Assocs., Ltd. v. Racine*, 806 P.2d 848, 854–55 (Alaska 1991) (holding six-year statute of limitations for contract applied to malpractice claim involving primarily economic injury).

**40.** *See State, Dep't of Corrections v. Welch*, 805 P.2d 979, 981–82 (Alaska 1991) (stating that statute of limitations on claim for negligent supervision of probationer began to run when plaintiffs had information reasonably sufficient to prompt inquiry into claim); *Mine Safety Appliances Co. v. Stiles*, 756 P.2d 288, 292 (Alaska 1988) (stating that statute of limitations begins to run when tort victim regains competency shortly after accident).

**41.** Compare *Johnson*, where the parties had no contractual relationship. The court there discussed the prospect of inconsistency between state and local government entities, and the effect of place of residence and whether it was a governmental unit that acted tortiously. 583 P.2d at 186–87.

weigh against contractual deviation. By agreeing to particular terms, contracting parties adopt their own predictable limits. Consider a tour contract between an out-of-state tour operator and an out-of-state tourist. The parties' access to the terms of their written contract in the event of injury is superior to their access to the subtleties of the statutory and case law of the state where the injury occurs. The contract thus enhances predictability. Nor would it appear that Alaska institutionally has any interest in being able to predict when a suit must be filed so long as those most interested have contracted for terms known or readily knowable to themselves. Nothing said in the cases the court cites to demonstrate this interest's existence intimates that it outweighs the interests of contracting parties in changing those deadlines.

Nor does enforcing the claim deadline defeat party expectations. There is no reason to think that a Florida resident touring Alaska has any pre-contract or pre-injury expectations about how much time Alaska's statutes and case law would give her to file suit in the event of injury. And after injury, one would expect a Florida resident to read her tour contract even before researching Alaska (and Washington) statutory and decisional law.

d. *Access to fair opportunity to seek redress*

The court also relies on Alaska's interest in "ensuring that fair compensation is available for personal injuries occurring in Alaska." [42] It asserts that Alaska has an interest in providing negligence victims "access to a legal system that affords them a fair opportunity to seek redress from the negligent party." [43]

I agree that Alaska has those interests.[44] But they are irrelevant to the narrow choice-

of-law issue presented here. The contract did not prohibit Long from asserting a tort claim against Holland America. It did not limit the damages she could seek. Because the one-year claim period is not legally inadequate, it does not limit fair compensation or access to the courts. Compare a complete waiver of any cause of action, or contract terms that would prevent third persons from obtaining any compensation from one of the contracting parties. Alaska's interest does not outweigh an interest in allowing parties to contract in ways that affect the procedure for asserting a tort claim without depriving a claimant of a fair opportunity to be made whole. And it does not outweigh Washington's interest.

The court's opinion may imply that there is an enhanced public interest in giving personal injury claimants the full statutory period in which to sue. But that interest is not offended if they agree by contract to a shorter, but still reasonable, deadline. Nothing about personal injury claims alters this conclusion. Indeed, personal injury and other personal interest plaintiffs are disfavored with the shortest limitations periods in Alaska.[45] That the period for commencing contract suits is longer than the period for commencing personal injury suits suggests that no fundamental policy recognized by the legislature favors personal injury plaintiffs. And notably the court's opinion does not discuss whether the one-year claims time limit afforded Long a "fair opportunity" to seek redress for her injuries.

e. *Deterring negligent conduct*

The third interest, deterring negligent conduct, is also irrelevant. Refusing to enforce the parties' bargain as written and Washington's interest in enforcing their bargain will at best only marginally help deter negligent conduct in Alaska, and enforcing their bar-

42. Op. at 433.

43. Op. at 433.

44. *See Savage Arms, Inc. v. Western Auto Supply Co.*, 18 P.3d 49, 53–54 (Alaska 2001) (concluding that tort liability of corporate successor should be evaluated using choice-of-law rules governing tort rather than contract or corporate law, in order to preserve public policy behind products liability law—to ensure that responsible parties bear costs of injuries).

45. *See* AS 09.10.070–.090; *see also McDowell v. State*, 957 P.2d 965, 971 (Alaska 1998) ("[T]he defense of the statute of limitations is a legitimate, but disfavored, defense.").

gain will not encourage negligent behavior. Despite such contract terms, tour operators have ample incentive to avoid negligent conduct because they must anticipate that their negligent conduct may threaten persons to whom the contract does not apply, or that their passengers will simply file timely suits.[46]

### 2. *Reliance on insurance policy cases*

The court's opinion relies on cases involving insurance policy provisions that reduce the time for suit.[47] Classifying this tour contract as an adhesion contract, it reasons that cases concerning time-for-suit clauses in insurance policies are relevant.[48]

Even if Long's contract were a contract of adhesion, our insurance cases would be irrelevant. Insurance policies are sui generis in Alaska.[49] Our unique treatment of insurance policies and insurers originates in the fiduciary relationship between insurers and their insureds.[50] There is no such relationship between a tour operator and its client. And underlying our insurance cases are the insureds' reasonable expectations: the expectation of coverage. Insurance has one fundamental purpose, protecting against loss. That is why insureds buy it. In comparison, a tour client's reasonable expectations focus

on the tour itself. There is no basis for thinking that a tour client has any reasonable expectations whatsoever about the procedures for making a claim if an injury occurs. In a tour contract, neither the inherent nature of the parties' relationship nor the purchaser's reasonable expectations resemble their counterparts that drive our analysis in insurance cases.

There are other relevant differences. There is nothing fundamentally mystifying about tour contracts compared to the subtleties of insurance policies. Insurance is a heavily regulated industry. Insurance policies often follow standardized forms, subject to agency approval in some states.[51] Their terms, if not impenetrable, are not self-evident. Most insureds would rather visit the dentist than read an insurance policy for content. And human nature makes it more likely that a purchaser will read a tour contract, whose purpose presages pleasure, than an insurance policy, whose purpose connotes misfortune. Tour clients are consequently more likely to read and understand their tour contracts.[52]

Long's contract was simply for a vacation tour. I would not treat it like we treat insurance policies.[53]

---

**46.** In comparison, see AS 45.45.900, discussed in the court's Opinion at page 435 in footnote 31. That statute unequivocally expresses the legislature's intention to prohibit certain indemnity clauses as contrary to Alaska's public policy; such clauses tend to deprive actors of an incentive to act nonnegligently, because they cannot be held liable for the consequences of their actionable conduct. The contract term in issue here has no such tendency.

**47.** *See* Op. at 435 (citing *Alaska Energy Auth. v. Fairmont Ins. Co.*, 845 P.2d 420, 422 (Alaska 1993); *Estes v. Alaska Ins. Guar. Ass'n*, 774 P.2d 1315, 1318 (Alaska 1989); *Fireman's Fund Ins. Co. v. Sand Lake Lounge, Inc.*, 514 P.2d 223, 226 (Alaska 1973)).

**48.** Op. at 436 & n. 37.

**49.** *See, e.g., Makarka v. Great Am. Ins. Co.*, 14 P.3d 964, 966 (Alaska 2000) ("[W]e treat insurance contracts as contracts of adhesion and construe them to provide coverage that a layperson would reasonably have expected, given a lay interpretation of the policy language.") (citations omitted).

**50.** *See, e.g., O.K. Lumber Co. v. Providence Washington Ins. Co.*, 759 P.2d 523, 525 (Alaska 1988) (stating that a fiduciary relationship [is] inherent in every insurance contract"); *Continental Ins. Co. v. Bussell*, 498 P.2d 706, 710 (Alaska 1972) (stating that finding policy is contract of adhesion turns not on its terms but on relationship of parties).

**51.** *See Fireman's Fund,* 514 P.2d at 226 n. 4 (discussing standard policy forms).

**52.** The contract here was both legible and understandable.

**53.** *See Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 593–94, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991) (enforcing forum selection clause in cruise ticket even though term was not bargained for because cruise line has special interest in limiting fora, ex ante forum selection has salutory effect of dispelling uncertainty as to where suits must be brought and defended, and passengers who purchase tickets with forum selection clause benefit in form of reduced fares reflecting cruise lines' savings from reduced litigation costs).

Moreover, I doubt that this contract met the second prerequisite for a contract of adhesion. Just because it was a "standard form printed contract[ ] prepared by one party and submitted to the other on a 'take-it-or-leave-it' basis,"[54] does not mean it was an adhesion contract.[55] The transaction "should be one which as a practical matter is essential, or nearly so, from the standpoint of the weaker party."[56] A tour is not an "essential" transaction, unlike insurance. Finding both prerequisites, we have held that insurance contracts are contracts of adhesion.[57] We have consequently enforced limitation provisions in insurance contracts only when they serve the purpose for which they were included in the contract.[58] We require insurers seeking to enforce time-for-suit clauses in insurance policies to demonstrate prejudice.[59] That is because an untimely claim would altogether defeat coverage and would therefore defeat the insured's reasonable expectations and the whole purpose for purchasing the policy. But a time-for-suit clause in a tour contract does not defeat the client's reasonable expectation, which is that the tour take place as promised. And the non-fiduciary relationship cannot be the source of imposing a special duty on the tour operator to prove prejudice to enforce the clause.[60]

Finally, one of the Alaska insurance cases cited by the court's opinion supports my conclusion that contractually adopting a one-year claim period that begins to run when the cause of action accrues is not contrary to public policy, even in an insurance context. In *Fireman's Fund Insurance Co. v. Sand Lake Lounge, Inc.* the insurance policy contained a one-year claim deadline.[61] But we held that this deadline was not itself unreasonable, so long as it was read to begin running not on the date of the fire, but on the date the cause of action accrued, when the fire insurer denied coverage.[62] That holding is inconsistent with the analysis that the court's opinion applies here.

### 3. Adequacy of time

Given that the court invokes a policy of ensuring "an adequate opportunity for filing a claim,"[63] it also seems inconsistent to find a policy violation without considering the adequacy of the time the contract specifies. The court would seemingly find a violation whenever a contract specifies a claim period shorter than the applicable statutory period, without regard to the adequacy of the time specified in the contract. The court's analysis does not differentiate between reductions of one day or eighteen months. It does not look to see whether the contractually specified period at least equals other statutory limitations periods, or the equivalent statutory limitations periods of other states.[64]

---

54. *Burgess Constr. Co. v. State*, 614 P.2d 1380, 1383 (Alaska 1980) (quoting *Standard Oil Co. v. Perkins*, 347 F.2d 379, 384 n. 5 (9th Cir.1965)).

55. *See id.* at 1383–84.

56. *Id.* at 1383. As a practical matter, the form of most public works construction contracts is unalterable. As we noted, "Burgess was not without options ... it could refuse to bid." *Id.* at 1384.

57. *See, e.g., Bering Strait Sch. Dist. v. RLI Ins. Co.*, 873 P.2d 1292, 1294 (Alaska 1994).

58. *See Alaska Energy Auth. v. Fairmont Ins. Co.*, 845 P.2d 420, 423–24 (Alaska 1993) (declining to enforce limitations provision absent showing by insurer that it had been prejudiced by insured's delay in filing suit); *Estes v. Alaska Ins. Guar. Ass'n*, 774 P.2d 1315, 1318 (Alaska 1989) (holding that to bar insured's claim for failure to comply with policy's one-year time limit, insurer must establish that insured's delay caused insurer to suffer such prejudice as limit was intended to avoid).

59. *See Estes*, 774 P.2d at 1318.

60. The "three common judicial responses" to adhesion contracts are all inappropriate here, where there was (1) no ambiguity; (2) the one-year provision was not an unexpected term outside Long's reasonable expectations and was expressed in clear, plain, and conspicuous language; and (3) the one-year term is not unenforceable as against public policy. *See Burgess*, 614 P.2d at 1384.

61. 514 P.2d 223, 224 (Alaska 1973).

62. *See Fireman's Fund*, 514 P.2d at 227.

63. Op. at 434.

64. *See, e.g.*, Cal.Civ.Proc.Code § 340 (West 2000) (one-year period in which to sue for "injury or death from wrongful act or neglect"); Ky.Rev. Stat.Ann. § 413.140 (Banks–Baldwin 2000) (one-year period in which to bring "[a]n action for an injury to the person of the plaintiff, or of her

Even a reduction of one day would offend the policies the court perceives.

I can agree that it would violate Alaska's public policy to reduce the time for suit so greatly that it would give a claimant inadequate time to investigate a possible claim and file suit. But if the period agreed upon does not unduly interfere with filing suit, Alaska's interest does not outweigh Washington's interest in enforcing Washington contracts. Alaska has no interest in an irreducible period; at most it is interested in a period that does not unduly restrict access to the courts. Given that the one-year period agreed upon here is no shorter than the one-year period the legislature specified for certain personal actions,[65] I think Alaska's public policy does not govern the choice-of-law issue. We could not hold that Alaska's public policy of access was offended by legislation reducing the personal injury statutory period to one year.[66] The time specified in the contract was adequate. This confirms that Alaska's policy interest is much narrower than the court finds it.

The court would apparently permit enforcement of the deadline upon a demonstration of prejudice.[67] But because the contract term itself requires no showing of prejudice, and because prejudice can rarely be demonstrated in any limitations case, the court is not enforcing the parties' agreement as written.

### D. *Overreaching*

The second main proposition underlying the court's decision is its conclusion that Holland America overreached when the contract was formed. I think any overreaching is irrelevant here. The court should distinguish contractual terms which give a party no opportunity to protect itself. Perhaps overreaching can vitiate particular contract provisions. For example, many of the cruise contract cases deal with choice-of-law and forum-selection clauses.[68] In those cases, the passenger is bound by the contract terms as soon as the adverse event occurs. Assuming that it is appropriate in those sorts of cases to determine whether there was overreaching when the contract was formed, this case instead concerns a time-for-suit clause. The passenger has an opportunity (and an acute interest) post-injury to determine whether to assert a claim and to find out what law controls that claim.[69] Long had

husband, his wife, child, ward, apprentice, or servant").

**65.** *See* AS 09.10.080 (prohibiting action for escape unless brought within one year); AS 09.10.090 (prohibiting private party's action for penalty unless brought within one year).

**66.** In *Fireman's Fund* we reasoned that a one-year deadline on suit against a fire insurer would "smack of unreasonableness" if the "operational effect . . . would be to reduce the limitation period to considerably less than one year from the date the cause of action accrued." 514 P.2d at 227. Here, of course, Long's cause of action accrued at the moment of injury. In *Fireman's Fund* we implicitly recognized that a one-year claim period was not in itself unreasonably short.

**67.** *See* Op. at 435.

**68.** *See McTigue v. Regal Cruises, Inc.*, No. 97 Civ. 7444(JSM), 1998 WL 191430, at *1–2 (S.D.N.Y. Apr.22, 1998) (refusing to enforce forum-selection clause when passenger received ticket five weeks before departure and after payment); *Corna v. American Hawaii Cruises, Inc.*, 794 F.Supp. 1005, 1008–12 (D.Haw.1992) (refusing to enforce forum-selection clause when passengers received tickets two to three days before departure and would have forfeited entire purchase price if they canceled); *Johnson v. Holland Am. Line–Westours, Inc.*, 206 Wis.2d 562, 557 N.W.2d 475, 478–79 (App.1996) (refusing to enforce forum-selection clause where express terms of ticket prevented passengers from rejecting it without forfeiting several thousand dollars). *But see Lauri v. Cunard Line Ltd.*, No. 00–CV–70656 DT, 2000 WL 791771, at *4 (E.D.Mich. May 15, 2000) (enforcing forum-selection clause even though passenger received ticket only nineteen days before sailing and would have forfeited entire purchase price if she canceled); relying on two shortened-limitations clause cases, *Natale v. Regency Maritime Corp.*, No. 94 Civ. 0256(LAP), 1995 WL 117611 (S.D.N.Y. Mar.17, 1995), and *Boyles v. Cunard Line Ltd.*, No. 93 Civ. 5472(CES), 1994 WL 449251 (S.D.N.Y. Jan.11, 1994).

**69.** *See Ames v. Celebrity Cruises, Inc.*, 97 Civ. 0065(LAP), 1998 WL 427694, at *5 (S.D.N.Y. July 29, 1998) (enforcing shortened limitations provision and stating that "[b]ecause plaintiffs were unaffected by the time limitations until they suffered injury, they had a duty at that time to consult their tickets or to contact [the cruise line] in order to learn of any limitations affecting their right to sue") (citation omitted); *Sasso v. Travel Dynamics, Inc.*, 844 F.Supp. 68, 71–73 (D.Mass. 1994) (enforcing shortened limitations provision

one year in which to investigate and sue. That is not an inadequate or unreasonable amount of time.[70] She had every incentive to read her tour contract promptly and ample opportunity to investigate her claim and bring suit within one year. Any possible prejudice the one-year term potentially posed to her could have been avoided with a modicum of diligence during the presumptively sufficient one-year period.

The shortness of time in which to seek a refund without forfeiture or in which to seek recission or reformation is of no significance to a contract condition whose adverse consequences can be avoided with modest post-injury effort.

The one-year limitations period does not establish overreaching.

### E. *Conclusion*

In short, the court's opinion reaches the wrong result. The purposes underlying Alaska's statutes of limitations are much more limited than those the court perceives. And those interests and policies the court relies on that actually exist are either not relevant here or are not offended by applying Washington law. Any overreaching by Holland America is also irrelevant to enforcing the one-year deadline. I therefore disagree that Holland America must demonstrate prejudice in order to rely on the terms of its contract. I would enforce the parties' contract and affirm the superior court's dismissal of Long's complaint.

even though injured passenger received ticket less than four weeks before departure, reasoning that important factor was plaintiff's consultation with counsel within three months of accident and stating that defendant should not be made to bear responsibility for plaintiff's counsel's inex-

plicable delay in requesting ticket or reading limitations period).

70. Long's attorney submitted a written claim to Holland America about ten months after Long was injured.